881 So.2d 1267 (2004)
TLC NOVELTY COMPANY, INC.
v.
PERINO'S INC., Perino's Boiling Pot, Inc., and Perino's Boiling Pot, II, Inc.
No. 04-CA-281.
Court of Appeal of Louisiana, Fifth Circuit.
August 31, 2004.
*1268 Philip F. Cossich, Jr., David A. Parsiola, Jeffrey A. Raines, W.J. Leblanc, Jr., Cossich, Sumich & Parsiola, Belle Chasse, LA, for Appellant.
Mark A. Pivach, George Pivach, II, Belle Chasse, LA, for Appellees.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and JAMES C. GULOTTA, Pro Tempore.
JAMES L. CANNELLA, Judge.
The Plaintiff, TLC Novelty Company, Inc. (TLC), appeals from a summary judgment granted by the trial court in favor of the Defendants, Perino's Inc. (Perino's), Perino's Boiling Pot, Inc. (Perino's I), and Perino's Boiling Pot II, Inc. (Perino's II), (collectively the Perino entities). For the reasons which follow, we affirm.
In 1996, Perino's and Perino's I, separately incorporated businesses, were owned by the same person, Lena Perino (Lena) and managed by her son, Salvadore "Sam" Perino (Sam). Perino's, incorporated in 1994, is a retail/wholesale fresh seafood market and delicatessen located at 6850 Westbank Expressway in Jefferson Parish. Perino's I, incorporated in 1996, was a boiled seafood restaurant and bar located at 3825 Westbank Expressway in Jefferson Parish. On November 12, 1996, Perino's and Perino's I entered into contracts, on a profit sharing basis, with TLC for the placement of video gaming and amusement devices on their premises for a term of five years.
Almost three years after signing the contracts, in October of 1999, a third business was incorporated, Perino's II. Lena was also the owner of this corporation and Sam managed it. Perino's II is a seafood restaurant and bar which sells both boiled and fried seafood and is located at 3754 Westbank Expressway, across the street from Perino's I. When Perino's II opened, Perino's I closed its restaurant facilities and continued operation only as a bar for approximately 12 months and then closed completely. This dispute arose when Perino's II refused to allow TLC to place its video gaming and amusement machines on its premises for the 18 month remainder of the November 12, 1996 contract. Perino's II instead contracted with another company for video and amusement machines to be located on its premises.
TLC filed suit against the Perino entities for breach of contract. Among other things, TLC argued that Perino's I and Perino's II were, for all intents and purposes, the same business and bound by the five year contract with TLC. The Perino entities argued that all three of the businesses were separate legal entities and not *1269 bound by contracts entered into by the others.
The parties filed cross motions for summary judgment. They both agree that there is no dispute as to the facts. TLC argued that Perino's II was created to avoid the contractual obligations that Perino's I had with TLC and, therefore, the trial court should look beyond the incorporation and find a breach of contract. The Perino entities argued that the three businesses were separate legal entities, all operating separately at the same time and, therefore, there had been no breach of the contract by Perino's II for refusing to allow TLC to place its machines on the restaurant's premises for the remainder of TLC's five year contract with Perino's I. On November 24, 2003, the trial court, without reasons, granted summary judgment in favor of the Perino entities and denied TLC's motion for summary judgment. It is from this judgment that TLC appeals.
On appeal TLC argues that the trial court erred and that under the terms of the contractual agreement, the Perino entities should be found liable under the contract entered into by TLC and Perino's I. Specifically, TLC points out that the video poker contract gave it the exclusive right to place video poker machines at the "Establishment's business premises" for a period of five years beginning November 12, 1996. "Establishment" is defined in the contract as follows:
"ESTABLISHMENT"  shall mean the current name and any successor name under which the individual who holds the license to sell alcoholic beverages for consumption on Establishment premises, whether such Establishment is a corporation, partnership, sole proprietorship or other type of legal entity. Further this agreement shall also be binding upon any assignees, successor purchaser that acquires ownership or control of the establishment or becomes the named licensee under any permit to sell alcoholic beverages for consumption on Establishment's premises.
"Premises" is defined in the contract as:
"PREMISES"  shall be the address listed in this agreement as well as any successor address to which Establishment transfers its operation during the term of this agreement.
Another contract between TLC and Perino's and Perino's I gave TLC the exclusive right to place amusement devices and cigarette dispensers at the premises for a period of five years and was signed on the same day as the video poker contract. It provided:
In the event Proprietor sells, leases, transfers or assigns its business location, Proprietor shall sell, lease, transfer or assign the business subject to this agreement and all of the conditions thereof.
Under these provisions, TLC argues that the Perino entities are liable to it for breach of the contracts because of the transfer of its restaurant business from Perino's I to Perino's II without fulfilling its contractual obligations. TLC argues that the issue presented is one of contractual interpretation based on the above contractual provisions.
The Perino entities argue that this is an over simplification of the legal issue herein. The legal issue cannot be resolved by a simple contractual interpretation where TLC is asking that a party, not a signatory to the contract, Perino's II, be held liable for not placing TLC video and amusement machines in its facility. The Perino entities argue that Perino's II is a separate legal entity and, as such, cannot be held liable for the contractual obligations of another separate legal entity, Perino's I. Moreover, even if the terms of the contracts *1270 are considered, they do not support TLC's position because Perino's II had a separate license to sell alcoholic beverages and both businesses operated simultaneously. Perino's II was not a successor to Perino's I and the business location of Perino's I was not sold, leased, transferred, or assigned to Perino's II.
It is well settled that appellate courts review summary judgments de novo using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94), 639 So.2d 730, 750; Nuccio v. Robert, 99-1327 (La.App. 5th Cir. 04/25/00), 761 So.2d 84, writ denied, 00-1453 (La.6/30/00), 766 So.2d 544; Moody v. United Nat. Ins. Co., 98-287 (La.App. 5th Cir.9/29/98), 743 So.2d 680. Thus, this court must consider whether, all genuine issues of material fact are absent and mover is entitled to judgment as a matter of law. Smith, supra; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. Moreover, the summary judgment procedure is favored, and shall be construed, as it was intended, to secure the just, speedy, and inexpensive determination of most actions. La. C.C.P. art. 966(A)(2); Magnon v. Collins, supra.
All parties agree that the facts involved in this controversy are not in dispute. Perino's I was incorporated in 1996. It, along with Perino's contracted with TLC in November of 1996, in a profit sharing arrangement, allowing TLC to have the exclusive right to provide video and amusement devices on the premises of each business for a term of five years. In October of 1999, a third business was incorporated, Perino's II. Perino's I conducted a boiled seafood and bar business. Perino's II was located across the street and conducted a boiled and fried seafood business along with an oyster bar and regular bar. Perino's II was three times the size of Perino's I. Shortly after Perino's II opened, Perino's I closed the restaurant part of its business and continued operating for another 12 months as simply a bar or lounge under the contract with TLC. Perino's I closed six months before the term of the TLC contract ran out. When Perino's I closed its restaurant business, Perino's II took the tables and chairs and trays from Perino's I. A new sign was procured utilizing The Boiling Pot name, with the addition of the terms "Seafood Restaurant" and "Oyster Bar." The employees from Perino's I, with the exception of one bartender, went to work at Perino's II after it opened. Perino's II had its own telephone numbers, although it took one of the former restaurant's telephone numbers after it closed completely. Perino's II did not take the kitchen boiling equipment from Perino's I, but purchased new kitchen equipment. The boiling pot from Perino's I was actually transferred to Perino's. The three businesses were separately incorporated, had separate bank accounts and separate licenses. The Office of Alcohol and Tobacco (ABO) Permit for Perino's I was issued in the name of "Perino's Boiling Pot Inc[,] Perino's Boiling Pot Inc." The ABO permit for Perino's II was issued in the name of "Perino's Boiling Pot II Inc[,] Perino's Boiling Pot." The permits had different permit numbers and addresses.
TLC has argued three theories of recovery. TLC argues that the Perino entities should be found to have breached the contracts between Perino's, and Perino's I and TLC because Perino's II is a successor/assignee to Perino's I, because Perino's II is nothing more than a continuation or reincarnation of Perino's I, or because the Perino entities operate as a single business enterprise, thereby binding Perino's II for the contractual obligations of Perino's I.
The Perino entities argue that Perino's II is not a successor/assignee because *1271 there is no contractual agreement to that effect and no part of Perino's I was sold to Perino's II. They argue that the continuation/reincarnation theory lacks merit because it pre-supposes the cessation of business simultaneously with the commencement of a new business. They point out that Perino's I continued in operation approximately 14 months simultaneously with Perino's II. Finally, the Perino entities argue that the single business enterprise theory is not applicable here because the three businesses were completely separate with separate bank accounts, employees and payrolls.
Reviewing the case de novo, we find that the summary judgment in favor of the Perino entities was properly granted. The TLC contracts were with Perino's and Perino's I. Prior to the expiration of the term, a new business was incorporated, Perino's II, and opened across the street from Perino's I. These were separate legal entities, all conducting their respective businesses simultaneously. There were separate bank accounts, licenses, and alcohol permits. We find that Perino's II was not a successor to Perino's I, nor a reincarnation of Perino's I and that the two businesses did not comprise a single business enterprise. Based on the foregoing, we find that the Perino entities did not breach their contracts with TLC when Perino's II opened its restaurant and bar business across the street from Perino's I and contracted with a company other than TLC for its video gaming and amusement devices.
Accordingly, we affirm the summary judgment granted by the trial court in favor of the Perino entities. Costs of appeal are assessed against TLC.
AFFIRMED.