WALTER J. ROTHSCHILD, Judge.
| ../This appeal arises out of cross Motions for Partial Summary Judgment filed in the trial court by plaintiff/appellant, Iberia Bank, and defendants/appellees, Stephen Benton, Sr., Stephen Benton, Jr., Frank Benton, and Christian Brown (hereinafter “the individual defendants”). The trial *250 court denied the Motion for Partial Summary Judgment filed by Iberia Bank, and granted the Motion for Partial Summary Judgment in favor of the individual defendants. Iberia Bank now seeks review of the trial court’s judgment. For the reasons which follow, we affirm.

FACTS AND PROCEDURAL HISTORY

On October 9, 2002, Iberia Bank and 3-D Acquisition Company, L.L.C. (“3-D”) entered into a business loan agreement, with a $650,000 principal line of credit. On the same date, a promissory note (“Iberia note”) was executed on behalf of 3-D for $650,000 or such lesser amounts that may be advanced on the revolving |4line of credit. The term of the promissory note was from October 9, 2002 until April 9, 2003, but the parties later extended the line of credit under the promissory note until July 31, 2003.
On the same day that the loan agreement and promissory note were executed, October 9, 2002, commercial guaranties were signed by the individual defendants in this ease, in which they agreed to guarantee payment of 3-D’s indebtedness to Iberia Bank. The guaranties signed by the individual defendants are identical, except in the amount guaranteed by each defendant. Thereafter, in or about November 2002, Iberia Bank acquired from Teche Bank and Trust Company, via assignment, a promissory note (“Teche note”) dated September 17, 2002, executed by 3-D in the principal amount of $353,500.
On June 1, 2004, Iberia Bank filed suit against 3-D and the individual defendants, asserting that it was the owner and holder of both the Iberia note and the Teche note and that defendants were liable for $104,283.28, plus interest, late charges, fees, and costs, which was still owed under the notes. The individual defendants filed an Exception of Vagueness,[1] which was granted by the trial court, and plaintiff was given 30 days to amend its petition. Thereafter, on September 24, 2004, plaintiff filed a First Amended Petition, asserting that $104,283.28 was owed under the Teche note only and that the individual defendants were liable for this debt, because their commercial guaranties covered all indebtedness owed by 3-D to Iberia Bank up to the amounts set forth in each guaranty. The individual defendants filed an Answer denying that the commercial guaranties secured the Teche note.
On October 14, 2004, the individual defendants filed a Third Party Demand against Robert Duncan, asserting that he had guaranteed the outstanding | ^indebtedness of 3-D under the Teche note and thus, he is liable for 3-D’s indebtedness under the Teche note. They also filed a Third Party Demand against Kelly Hebert and Charles Hodges, asserting that they signed commercial guarantees securing the Iberia note, just as the individual defendants did, so they would also be liable if it is determined that the individual defendants are liable for 3-D’s indebtedness under the Teche note.
On November 30, 2004, Iberia Bank filed a Motion for Partial Summary Judgment against the individual defendants, asserting that the commercial guaranties signed by the individual defendants secured all of the “present and future” indebtedness of 3-D to Iberia Bank, including the Teche note. In their motion, they sought a determination from the trial court that the Teche note was secured by these commercial guaranties. On January 3, 2005, the individual defendants filed a Mo *251 tion for Partial Summary Judgment, asserting that they are not liable for any indebtedness of 3-D to Iberia Bank under the Teche note, because the commercial guaranties that they signed secured the Iberia note only, not the Teche note.
A hearing on both Motions for Partial Summary Judgment was held on February 18, 2005. The trial court denied Iberia Bank’s motion and granted the individual defendants’ motion, finding that the language of the commercial guaranties does not cover the Teche note and thus, the individual defendants are not liable for the indebtedness of 3-D to Iberia Bank under the Teche note. It is from this judgment that Iberia Bank appeals.

DISCUSSION

It is well settled that appellate courts review summary judgments de novo using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750; Nuccio v. Robert, 99-1327 (La.App. 5th Cir.04/25/00), 761 So.2d 84, 87, writ denied, 00-1453 (La.6/30/00), 766 So.2d 544. A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Summary judgment procedure is favored, and shall be construed, as it was intended, to secure the just, speedy, and inexpensive determination of every action. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 195; LSA-C.C.P. art. 966(A)(2).
On appeal, Iberia Bank contends that the trial court erred in denying its Motion for Partial Summary Judgment and granting the individual defendants’ Motion for Partial Summary Judgment, because it misinterpreted the language of the commercial guaranties, which are contracts. Iberia Bank argues that the clear and unambiguous language of the commercial guaranties demonstrates that the individual defendants intended to secure all present and future debts of 3-D to Iberia, including the Teche note, up to the maximum limit contained in .each guaranty. They note that each commercial guaranty provides that the guarantor “absolutely and unconditionally guarantees and promises to pay to Iberia Bank (“Lender”) ... .the Indebtedness (as that term is defined below) of 3-D.... (“Borrower”) to Lender on the terms and conditions set forth in this Guaranty.”
The fourth paragraph of each of the commercial guaranties defines “indebtedness” as follows:
The word “Indebtedness” as used in this Guaranty means individually, collectively, interchangeably and without limitation any and all present and future loans, loan advances, extensions of credit, obligations and/or liabilities that Borrower may now and/or in the future owe to and/or incur in favor of Lender, whether direct or 17indirect, or by way of assignment or purchase of a participation interest, and whether absolute or contingent, voluntary or involuntary, determined or undetermined, liquidated or unliquidated, due or to become due, secured or unsecured, and whether Borrower may be liable individually, jointly or solidarily with others, whether primarily or secondarily, or as a guarantor or otherwise, and whether now existing or hereafter arising, of every nature and kind whatsoever....”
Plaintiff asserts that this language establishes that the guaranties were not intended to secure only a specific debt, but rather were intended to secure all present *252 or future debts owed by 3-D to Iberia Bank, including the Teche note that was acquired by Iberia Bank via assignment after the guaranties had been signed.
The individual defendants assert that the term “indebtedness” under the guaranties does not include the Teche note, because “indebtedness” is defined a second time in the commercial guaranties as follows:
The word “Indebtedness” means the indebtedness evidenced by the Note or Related Documents, in principal, interest, costs, expenses and attorney’s fees and all other fees and charges together with all other indebtedness and costs and expenses for which Borrower is responsible under this Guaranty or under any of the Related Documents.
The word “Note” is defined in the commercial guaranties and in the loan agreement as “the promissory note dated October 9, 2002, in the original principal amount of $650,000 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.” Thus, defendants argue that the Teche note is not secured under the commercial guaranties signed by the individual defendants, because only indebtedness under the Iberia note and its related documents is covered in this agreement.
Iberia Bank concedes that the Teche note is not included under the definition of “note” in the commercial guaranties or the loan agreement, but it contends that it is a “related document,” and thus, covered by the guaranties. Iberia Bank argues |8that while “related documents” is not defined in the guaranties, the loan agreement provides as follows:
The words “Related Documents” mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.
Accordingly, Iberia Bank contends that when the loan agreement and the commercial guaranties are construed together, it is clear that the Teche note is a “related document” secured by the guaranties executed by the individual defendants. Defendants respond that the Teche note cannot be considered a “related document,” because it was not “executed in connection with the Loan,” as required by its definition, but rather was executed in connection with a different loan. Further, they argue that the Teche note has different terms, interest rates, maturity dates, and other provisions than the Iberia note, and there is no evidence relating the Teche note to the $650,000 loan agreement or the Iberia note.
When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment if appropriate. LSA-C.C. art. 2046; Donucet v. Huffine Roofing and Const., 02-1049 (La.App. 5 Cir. 2/25/03), 841 So.2d 916, 918-919. In Louisiana, every provision in a contract is to be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art. 2050. Although a contract may be worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. LSA-C.C. art. 2051.
The wording of the commercial guaranties signed by the individual defendants shows that the intention of the parties was *253 to limit the guaranties to lacover 3-D’s indebtedness to Iberia Bank under the Iberia note. There is no indication in any of the documents that the Teche note was intended to be included in the scope of the commercial guaranties. The commercial guaranties and the loan agreement specifically refer to the secured note as “the promissory note dated October 9, 2002, in the original principal amount of $650,000.” In fact, none of the documents executed on October 9, 2002 refer to any loan or note other than the $650,000 loan agreement and the Iberia note.
Moreover, there is no indication in the commercial guaranties, the other documents signed on October 9, 2002, or elsewhere in the record that the Teche note is related to the Iberia note. The term “related documents” as set forth in the loan agreement is defined to include several types of documents “executed in connection with the Loan.” The Teche note was executed prior to the $650,000 loan agreement, so it was clearly not executed in connection with the loan agreement. The acquisition of the Teche note by Iberia Bank after the commercial guaranties were signed in connection with the Iberia note does not make the Teche note related to the Iberia note. Thus, the Teche note is not a related document that is secured by the commercial guaranties executed by the individual defendants.
Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. LSA-C.C. art. 2048. Although Iberia Bank asserts that the words, “any and all present or future loans” in the commercial guaranties establishes that the individual defendants guaranteed any loan 3-D already had with Iberia Bank or later acquired, including the Teche note, such an interpretation is not reasonable or logical. The object of the contract was for the individual defendants to guaranty a line of credit up to $650,000, which could include present loans made from Iberia Bank to 3-D and any loans extended to 3-D by Iberia Bank in the future in connection with the $650,000 line of credit. |inThis is evidenced by the second definition of indebtedness, which includes only the indebtedness evidenced by the October 9, 2002 promissory note and related documents. The interpretation that best conforms to the object of the contract and the most reasonable interpretation of the language indicating that the guaranties cover “any and all present or future loans” is that it was meant to cover the future extensions of credit under the $650,000 loan agreement, since it was a continuing line of credit and not a single $650,000 loan transaction.
Iberia Bank further argues that the trial court erred in strictly construing the commercial guaranties against Iberia Bank, as drafter of the guaranties, under LSA-C.C. art. 2056. Iberia Bank asserts that there is no evidence in the record to support the conclusion that Iberia Bank was unilateral!y responsible for inserting the language that created ambiguity in this contract. LSA-C.C. art. 2056 provides:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
This article applies only where doubt as to the meaning of the contract terms cannot otherwise be resolved by using the laws of contract interpretation. In this case, there is no inconsistency in the terms of the commercial guaranties and any doubt can be resolved without application of LSA-C.C. art. 2056. Thus, we see no reason to apply LSA-C.C. art. 2056.
*254 Alternatively, Iberia Bank contends that there are genuine issues of material fact regarding whether or not the parties intended for the commercial guaranties to secure the Teche note. Iberia Bank asserts that it submitted parol evidence, the affidavit of Karl Hoefer, to establish the intent of the parties, but the trial court improperly excluded it. Iberia Bank argues that the individual defendants dispute l^that the parties intended to secure the Teche note, so this is a genuine issue of material fact.
Where the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. LSA-C.C. art. 2046. Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless the written expression of the common intention of the parties is ambiguous. Campbell v. Melton, 01-2578 (La.5/14/02), 817 So.2d 69, 75. In the present case, the terms of the commercial guaranties are not inconsistent or ambiguous and do not lead to absurd consequences, so the trial court properly excluded the parol evidence submitted by Iberia Bank.
After a careful and thorough de novo review of both Motions for Partial Summary Judgment, we find that the trial court correctly granted the individual defendants’ motion and denied Iberia Bank’s motion. Accordingly, we affirm the judgment of the trial court.

DECREE

For the foregoing reasons, we affirm the judgment of the trial court, granting the Motion for Partial Summary Judgment filed by the individual defendants, Stephen Benton, Sr., Stephen Benton, Jr., Frank Benton, and Christian Brown, and denying Iberia Bank’s Motion for Partial Summary Judgment.

AFFIRMED.

CANNELLA, J., dissents with reasons.

. The individual defendants originally filed an Exception of No Cause of Action, but it was later converted to an Exception of Vagueness.