945 So.2d 251 (2006)
Robert RIDDLE and Lisa Riddle, Plaintiff-Appellee,
v.
FORTIS INSURANCE COMPANY, Defendant-Appellant.
No. 41,695-CA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
*252 Kevin W. Trahan, for Appellant.
Gregory Scott Moore, for Appellee.
Before BROWN, WILLIAMS and DREW, JJ.
WILLIAMS, J.
Fortis Insurance Company ("Fortis"), seeks reversal of the trial court's ruling granting summary judgment in favor of Robert and Lisa Riddle. The trial court found that the health insurance policy issued by Fortis did not exclude coverage for a condition suffered by Lisa Riddle following the delivery of her son. For the reasons that follow, the judgment of the trial court is hereby affirmed.

FACTS
On December 29, 2003, Lisa Riddle gave birth to her son, Dylan Riddle, at North Monroe Hospital in Monroe, Louisiana. After Dylan's delivery, Mrs. Riddle suffered significant postpartum hemorrhaging which led to the development of disseminated intravascular coagulopathy (hereinafter referred to as "DIC"). As a result of this condition, Mrs. Riddle underwent an emergency hysterectomy and required treatment for several days in the intensive care unit followed by several days on the postpartum unit.
At the time of the delivery and ensuing complications, Robert and Lisa Riddle were covered by a major medical health insurance policy issued by Fortis for a one-year term beginning on April 13, 2003. Since the Riddles had not purchased the optional maternity coverage, the policy did not provide coverage for expenses generally associated with childbirth. Accordingly, the Riddles paid the expenses associated with the pregnancy and the delivery of the child. However, believing that the policy provided coverage for the charges associated with treatment of the complications which followed the childbirth, the Riddles filed a claim with Fortis seeking coverage for the medical expenses arising from Mrs. Riddle's development of and treatment for DIC.
Fortis denied the claim. The Riddles subsequently filed the instant lawsuit claiming coverage under the policy and seeking damages for double the amount of the denied claim. Fortis answered the petition by denying that coverage under its policy extended to the treatment rendered to Mrs. Riddle because it was rendered to treat complications arising as a result of her pregnancy. The Riddles and Fortis filed cross-motions for summary judgment on the issue of coverage.
The evidence submitted to the trial court on the cross-motions for summary judgment consisted of the deposition testimony of Dr. Tonya Sheppard, the affidavit and deposition testimony of Dr. Terry Tugwell, the affidavit of Dr. R. Joseph Fernandez, the affidavit of Dr. Charlotte A. Heidenreich and a copy of the Fortis' policy under which coverage was to be determined.[1]
The "Covered Medical Services" portion of the policy provides in pertinent part:
Covered Medical Services include only Covered Charges for the services and supplies listed in this policy.
* * *
Hospital Services include:

*253  daily room and board up to the semi-private room rate;
 confinement in a critical care unit; and
 all other Inpatient or Outpatient treatment provided by a Hospital or Ambulatory Surgical Center, including charges for dental treatment rendered in a Hospital when the mental or physical condition of an Insured requires that such dental care be provided in a Hospital setting.
* * *
Health Care Practitioner Services including surgery and anesthesia.
However, that section of the policy also includes the following exclusionary language:
Limited coverage for specific conditions of pregnancy includes only spontaneous miscarriage, ectopic pregnancy, Medically Necessary caesarean section, gestational diabetes mellitus, and medical conditions whose diagnoses are distinct from pregnancy but are adversely affected by pregnancy.
Dr. Tonya Sheppard, an obstetrician/gynecologist, was the physician who treated Mrs. Riddle during the pregnancy, delivery and ensuing complications. In her deposition, Dr. Sheppard testified that Mrs. Riddle had a fairly complication-free pregnancy and delivery. Dr. Sheppard testified that following Dylan's birth, Mrs. Riddle was administered medication to help the uterus "clamp down" or contract to prevent heavy bleeding, which is a typical treatment after the delivery of a child. Nevertheless, Mrs. Riddle experienced excessive bleeding in the hours following the delivery.
Mrs. Riddle was unresponsive to the administration of additional medications and other minimally invasive procedures intended to control the bleeding. Consequently, Dr. Sheppard ordered blood tests to assess Mrs. Riddle's blood clotting factors. After reviewing the results of the blood tests, Dr. Sheppard concluded that Mrs. Riddle was suffering from DIC, a complication which prevents the blood from properly clotting and which can be associated with any acute blood loss. In Mrs. Riddle's case, the acute source of the bleeding was the uterus caused by the vaginal delivery of the child just hours earlier. Dr. Sheppard testified that she performed the emergency hysterectomy because treatment of DIC generally requires the elimination of the source of the bleeding.
With regard to the issue before this court, Dr. Sheppard testified that in the absence of the pregnancy and delivery, Mrs. Riddle would probably not have developed DIC. However, she also stated that Mrs. Riddle's DIC was a medical condition whose diagnosis was distinct from her pregnancy, but which was adversely affected thereby.
Dr. Tugwell, a board certified specialist in the area of obstetrics and gynecology, assisted in treating Mrs. Riddle during the emergency hysterectomy. His affidavit and deposition testimony reaffirmed Dr. Sheppard's assertion that Mrs. Riddle's development of DIC was triggered by her pregnancy and delivery and would, most likely, not have occurred absent the pregnancy and delivery. Dr. Tugwell also corroborated Dr. Sheppard's statement that DIC was a medical condition whose diagnosis was distinct from her pregnancy but was adversely affected by her pregnancy.
In support of its motion for summary judgment, Fortis submitted the affidavit of Dr. Charlotte A. Heidenreich, a board certified internist employed by Fortis as Medical Director, in which she attested to having examined Mrs. Riddle's medical *254 records. Dr. Heidenreich expressed the opinion that Mrs. Riddle's development of DIC was "directly caused by her pregnancy" and that it was not a condition distinct from her pregnancy.
Fortis also submitted the affidavit of Dr. R. Joseph Fernandez, a board certified obstetrician/gynecologist, who described DIC as "a disorder or malfunction of the clotting process within the body." In his affidavit, Dr. Fernandez asserted that DIC is not a distinct clinical entity and is always associated with another condition. He further attested that after examining Mrs. Riddle's medical records, it was his conclusion that she suffered from DIC and that it resulted from her pregnancy. In conclusion, Dr. Fernandez opined that the treatment for Mrs. Riddle's DIC would not be covered under the Fortis policy because it was not a "distinct condition separate from pregnancy but rather a condition caused by her pregnancy."
Following a hearing, the trial court signed a judgment finding that the policy exclusion relied on by Fortis did not operate to exclude coverage of the Riddles' claim. However, the judgment specifically stated that the ruling pertained only to the applicability of the exclusion argued and not whether the policy actually extended coverage. Subject to this condition, the trial court granted summary judgment in favor of the Riddles and denied Fortis' motion for summary judgment. Upon Fortis' request for clarification, the trial court issued an amending judgment, granting summary judgment in favor of the Riddles, finding coverage for Mrs. Riddle's DIC existed under the terms and conditions of the policy. The instant appeal followed.

DISCUSSION
In determining whether summary judgment is appropriate, appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is proper. Suire v. Lafayette City-Parish Consolidated Government, XXXX-XXXX (La.04/12/05), 907 So.2d 37. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions and shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
The mover has the initial burden of proof to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover must only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. LSA-C.C.P. art. 966(C)(2).
As a contract between the parties, an insurance policy should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759. When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. Broadmoor Anderson v. National Union Fire Ins. Co. of Louisiana, 40,096 (La.App.2d Cir.9/28/05), 912 *255 So.2d 400, writ denied, 2005-2462 (La.3/24/06), 925 So.2d 1239.
If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. See LSA-C.C. art.2046; Magnon v. Collins, 1998-2822 (La.7/7/99), 739 So.2d 191. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Ins. Guar. Ass'n, supra. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. LSA-C.C. art. 2048. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured. Louisiana Ins. Guar. Ass'n, supra.
In the instant case, Fortis contends a genuine issue of material fact exists with regard to whether its policy exclusion precluded coverage for the treatment of DIC. According to Fortis, the evidence before the trial court clearly established that Mrs. Riddle's development of DIC was caused by her pregnancy.
It is undisputed by any of the evidence that Mrs. Riddle's development of DIC was a direct result of her pregnancy with and delivery of her infant son, Dylan Riddle. Neither the defendant's experts, nor Mrs. Riddle's own treating physicians dispute that fact. The question posed by the policy language, however, is whether Mrs. Riddle's DIC was "a condition whose [diagnosis is] distinct from pregnancy but [is] adversely affected by pregnancy." Fortis suggests that because the condition was caused by the pregnancy and would not have occurred absent the pregnancy, that it cannot be distinct therefrom.
We disagree. Fortis' interpretation ignores the provision's introductory phrase which states that "Limited coverage for specific conditions of pregnancy includes. . . ." Accordingly, it is axiomatic that any of the conditions to which coverage are being extended thereunder are going to have arisen as a result of a pregnancy.
Both of Mrs. Riddle's treating physicians unequivocally testified, although in a conclusory fashion, that DIC is a medical condition whose diagnosis is distinct from pregnancy. Fortis' experts, on the other hand, testified that Mrs. Riddle's DIC was not distinct from her pregnancy because it was caused by her pregnancy. The issue, therefore, is whether these opinions are in direct contradiction thereby creating a genuine issue of material fact, or whether they can both be accurate and form the basis for a proper interpretation of the policy exclusion.
The term "diagnosis" was defined by Dr. Tugwell in his affidavit as "a concise technical description of a taxonomic entity giving its distinguishing characteristics." THE ATTORNEY'S DICTIONARY OF MEDICINE AND WORD FINDER, J.E. Schmidt, M.D. (2001) defines "diagnosis" as "the determination of what kind of disease a patient is suffering from and the verdict decided upon." Therefore, in order for the diagnosis of a medical condition to be distinct from pregnancy, the determination of the condition being suffered by the patient must only be susceptible of differentiation from pregnancy. This susceptibility of differentiation, however, is not a requirement that it be unrelated to the pregnancy. This is evident from the fact that all of the conditions for which coverage is extended *256 under the subject policy provision are anticipated to arise during pregnancy and reflect an intent to provide coverage for serious complications which may arise during a pregnancy. While there is no dispute that Mrs. Riddle's DIC was brought on by the pregnancy and delivery, there is also no dispute that DIC is a complication which can occur outside of pregnancy. This makes its diagnosis distinct from pregnancy though, in the present case, adversely affected by pregnancy.
We find inapposite the parties' discussion of whether postpartum DIC is distinguished from DIC as it arises in other circumstances in the generally accepted coding manual known as ICD-9. We do not find the facts regarding the coding to be conclusive on the question of whether the diagnosis of postpartum DIC is distinct from pregnancy, nor if they were, why they would be controlling in the interpretation of this insurance policy. The expert opinions given in the present case are not inconsistent with a finding that Mrs. Riddle was diagnosed with a postpartum complication distinct from her pregnancy. The acknowledgment by the coding manual that DIC can arise as a postpartum complication does nothing to detract from our conclusion in that regard.

CONCLUSION
Accordingly, we hereby affirm the trial court's summary judgment in favor of Robert and Lisa Riddles, finding coverage under Fortis' health insurance policy for treatment of Mrs. Riddle's DIC, and the trial court's denial of Fortis' motion for summary judgment. The costs of this appeal are to be borne by appellant.
AFFIRMED.
NOTES
[1] While Fortis also submitted a copy of what it alleges to be portions of a widely accepted medical text authored by Dr. Steven L. Clark, Dr. David B. Covan, Mr. Gary B.V. Hawkins, and Dr. Jeffrey P. Phelan, entitled "Critical Care Obstetrics," it does not constitute competent summary judgment evidence, i.e., affidavits, pleadings, depositions, answers to interrogatories, and admissions on file. LSA-C.C.P. art. 966(B).