739 So.2d 191 (1999)
Rhett C. MAGNON
v.
Gwendolyn COLLINS, et al.
No. 98-C-2822.
Supreme Court of Louisiana.
July 7, 1999.
*192 Joseph Maselli, Jr., Plauche, Maselli, Landry & Parkerson, New Orleans, Diane Sandra Mitnik, New Orleans, Counsel for Applicant.
Paul C. Miniclier, William Ryan Acomb, J. Don Kelly, Porteous, Hainkel, Johnson & Sarpy, New Orleans, Stephen Robert Barry, Weiss & Eason, New Orleans, Counsel for Respondent.
CALOGERO, Chief Justice.[*]
On June 15, 1992, a vehicle owned and operated by plaintiff, Rhett C. Magnon, was rear-ended by a vehicle owned and operated by Gwendolyn Collins. At the time of the accident, Magnon was acting within the course and scope of his employment with Phelps Dunbar, L.L.P., as a private investigator. More particularly, he was traveling to meet an investigator at *193 the Jefferson Parish Detective Bureau in connection with a case being handled by Phelps Dunbar. Prior to departing to meet the investigator, Magnon had loaded his car with his camera, brief case, and similar items.
Magnon filed suit against Collins, the Louisiana Insurance Guarantee Association ("LIGA"),[1] and his personal uninsured/ underinsured motorist ("UM") carrier, State Farm Mutual Automobile Insurance Company. In turn, State Farm filed a third-party demand against Vigilant Insurance Company, alleging that Magnon was entitled to primary or co-primary UM coverage under a commercial general liability ("CGL") policy Vigilant had issued to Magnon's employer, Phelps Dunbar.[2] Subsequently, Magnon amended his petition and made a similar assertion when he named Vigilant as a defendant and claimed that he was entitled to UM coverage under the policy issued by Vigilant to Phelps Dunbar.
State Farm and Vigilant filed motions for summary judgment on the issue of Vigilant's liability, State Farm contending there was $1,000,000.00 of UM coverage under Vigilant's policy and Vigilant contending there was no UM coverage. LIGA filed a motion for summary judgment as well, asserting that the policies issued by State Farm and Vigilant provided UM coverage in excess of the goodfaith amount in dispute, and thus it was entitled to dismissal pursuant to La.R.S. § 22:1386, which requires generally exhaustion of rights under other policies before recovering from LIGA. The trial court granted State Farm's motion, and denied Vigilant's, holding that Vigilant's policy did provide UM coverage to Magnon and such coverage should be applied on a co-primary basis with State Farm's coverage. The trial judge also granted LIGA's motion for summary judgment, holding that State Farm's and Vigilant's policies provided ample coverage for Magnon's damages. Vigilant suspensively appealed the trial court's judgment granting the motions of State Farm and LIGA, and denying Vigilant's own. The court of appeal affirmed the trial court's judgment. Upon the application of Vigilant, we granted certiorari to review the correctness of the lower courts' judgments.
Vigilant's policy is not an auto liability policy and no specific autos are identified therein. Rather, Vigilant's policy is a CGL policy which contained a separate section entitled Non-Owned and Hired Auto Liability Insurance. Under the terms of this section, the policy provides $1,000,000.00 of auto liability coverage, but does not expressly provide any UM coverage. Nonetheless, UM coverage was not validly rejected. Under the same auto liability section, the policy provides that "the words `you' or `your' refer to the Named Insured shown in the Declarations." That named insured is Phelps Dunbar. Moreover, the policy provides that "COVERED AUTO means an auto you do not own." Thus, it is undisputed that a covered auto is any auto not owned by Phelps Dunbar. The policy then discusses "insured" in the following manner:
WHO IS INSURED
Each of the following is an insured under this insurance to the extent set forth below:
1. you for any covered auto.
2. anyone else while using, with your permission, a covered auto except:
a. the owner or anyone else from whom you hire or borrow a covered auto.
b. your employee if the covered auto is owned by that employee or a member of his or her household.
c. someone using a covered auto while he or she is working in a *194 business of selling, servicing, repairing or parking autos unless that business is yours.
d. anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered auto.
e. a partner of yours for a covered auto owned by him or her or a member of his or her household.
3. anyone liable for the conduct of an insured described above but only to the extent of that liability.
Vigilant asserts that Magnon is not an insured under the clear and unambiguous language of the policy, which, according to Vigilant, dispenses with any need to discuss whether Magnon is entitled to UM coverage. Specifically, Vigilant contends that Magnon is excluded from the definition of insured by section 2(b) of the policy because he was an employee of Phelps Dunbar driving a car he owned, which automobile qualifies as a "covered auto," i.e., a car not owned by Phelps Dunbar. Vigilant's assertion that Magnon was driving a covered auto owned by him is not disputed by any of the parties. Vigilant avers that section 2(d) of the policy's definition of insured does not apply to Magnon because it merely excludes non-employees from coverage while moving property to or from a covered auto. Vigilant's interpretation of section 2(d) is best demonstrated in the bracketed, italicized text below:
Each of the following is an insured ... to the extent set forth below:
2. anyone else [anyone other than Phelps Dunbar] while using, with your [Phelps Dunbar's] permission, a covered auto [a car not owned by Phelps Dunbar] except:
d. anyone other than your employees [or, in other words, non-employees]... while moving property to or from a covered auto [a car not owned by Phelps Dunbar].

State Farm and LIGA (which adopted the arguments and briefs submitted by State Farm) agree with Vigilant that if Magnon is not an insured for auto liability purposes under the policy language, then he is not entitled to UM coverage. They do, however, dispute Vigilant's conclusion that Magnon is not an insured under the policy's definition. State Farm and LIGA assert that the policy contains conflicting definitions of insured. According to State Farm and LIGA, sections 2(a) through 2(e) are not exclusions, but are mutually exclusive definitions of insured. Although Magnon does not fit within the definition of insured in section 2(b) because he was driving a "covered auto" which he owned, they assert that Magnon is an insured under section 2(d). They argue that section 2(d) contains a double negative, viz., "anyone else ... except anyone other than employees." Accordingly, section 2(d) should be interpreted to read: "The following is an insured: your employees ... while moving property to or from a covered auto." Citing Howell v. Balboa Insurance Co., 564 So.2d 298 (La.1990), State Farm and LIGA further contend that at the instant Magnon became an insured by moving property to a covered auto, Magnon became entitled to UM coverage while later driving the car because UM coverage attaches to the person.
Magnon's briefs to this Court contain substantially broader arguments in favor of coverage than those averred by State Farm and LIGA. Magnon first asserts that he was an insured under the definition in the general liability portion of the policy, which provided liability coverage for Phelps Dunbar's employees "for acts within the scope of their employment by [Phelps Dunbar]." Because Magnon's injury occurred within the scope of his employment and because Louisiana's UM statute does not require that an insurance policy in question be an auto liability "policy," Magnon asserts that he is entitled to UM coverage. Magnon next asserts that he is an insured under section 2(d) of the auto liability portion of the policy. As *195 does State Farm and LIGA, Magnon interprets section 2(d) to define "insured" as "employees while moving property to or from a covered auto."
Alternatively, Magnon asserts that if section 2(d) does not clearly define "insured" as employees while moving property to or from a covered auto, then sections 2(b) and 2(d) are at the very least ambiguous and therefore must be read in a way to provide UM coverage. Magnon contends the definition of insured "is ambiguous on who is provided coverage once an insured appears to move between different definitions of `insured,'" because section 2(b) appears to limit coverage if the covered auto is owned by the employee and section 2(d) provides coverage for employees while moving property to or from a covered auto. According to Magnon, these sections provide coverage to an employee in one instance but not another in contravention of the rule that UM coverage, when applicable, attaches to the person. Magnon further asserts that sections 2(a) through 2(e) are ambiguous because it is unclear whether they act as exclusions or alternative definitions of insured. Finally, Magnon asserts that the definition of insured under the auto liability portion of the policy is ambiguous in light of the fact that the general liability portion of the policy provides coverage for employees within the scope of their employment.
The court of appeal treated section 2(b) as an exclusion from the definition of insured. Citing Hobbs v. Rhodes, 95-1937 (La.App. 4th Cir.1995), 667 So.2d 1112, writ denied, relator may reraise on appeal, 96-0733 (La.5/3/96), 672 So.2d 691, the court of appeal then concluded that section "2(d) is an exception to the exclusion of the employee when the employee is driving his own auto." According to the court of appeal, because UM coverage attaches to the person, once Magnon moved the property to or from his auto, the provision was triggered and he was covered by UM.[3]
Summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hosp., 639 So.2d 730, 750 (La.1994); Schroeder v. Board of Sups. of La. State Univ., 591 So.2d 342, 345 (La. 1991). An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Smith, 639 So.2d at 750. Moreover, the summary judgment procedure is favored, and shall be construed, as it was intended, to secure the just, speedy, and inexpensive determination of most actions. La.C.Civ.Pro. art 966(A)(2). None of the parties assert that any genuine issues of material fact exist, and, after our review of the record we find none. The issue is purely and simply one of law. So, we must determine whether as a matter of law Magnon is entitled to UM coverage under the policy issued by Vigilant to Phelps Dunbar, or contrariwise whether Vigilant is entitled to summary judgment, there being an absence of UM coverage.
Under Louisiana's UM statute, La.R.S. § 22:1406, automobile liability insurance delivered or issued for delivery in Louisiana and arising out of ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must provide UM motorist coverage equal to the liability provided for bodily injury, unless UM coverage has been validly rejected or lower UM limits have been selected. Jones v. Henry, 542 So.2d 507, 508 (La.1989). The requirement that there be UM coverage is an implied amendment of any automobile *196 liability policy, even one which does not expressly address the subject matter, as UM coverage will be read into the policy unless validly rejected. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). Although Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statute, it is well-settled that a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy. See Taylor v. Rowell, 98-2865, at 6 (La.5/18/99), 736 So.2d 812; Howell v. Balboa Ins. Co., 564 So.2d 298, 301-02 (La. 1990); Seaton v. Kelly, 339 So.2d 731, 735 (La.1976); Armand v. Rhodes, 96-15, at 7, 685 So.2d 546, 550 (La.App. 3d Cir.12/11/96), writ denied, 97-0006 (La.3/21/97), 691 So.2d 81; Guedry v. Fromenthal, 92-2228 (La.App. 1st Cir.11/24/93), 633 So.2d 287, 289; Zanca v. Breaux, 590 So.2d 821, 823 (La.App. 4th Cir.1991); Haltom v. State Farm Mut. Auto. Ins. Co., 588 So.2d 792, 794 (La.App. 2d Cir.1991); Barnes v. Thames, 578 So.2d 1155, 1162 (La.App. 1st Cir.1991); Plaisance v. Fogg, 568 So.2d 1119, 1124 (La. App. 3d Cir.1990), writ denied, 572 So.2d 63 (La.1991); Futch v. Commercial Union Ins. Co., 568 So.2d 588, 591 (La.App. 4th Cir.1990); Pridgen v. Jones, 556 So.2d 945, 949 (La.App. 3d Cir.1990); Saffel v. Bamburg, 540 So.2d 988, 990 (La.App. 2d Cir.), writ denied, 542 So.2d 1380 (La.1989); Stewart v. Robinson, 521 So.2d 1241, 1247 (La.App. 3d Cir.1988), writ granted, 526 So.2d 785 (La.1988) (appeal dismissed by parties 11/21/88); Pierron v. Lirette, 468 So.2d 1305, 1307 (La.App. 1st Cir.1985); Scherer v. Chaisson, 469 So.2d 510, 512 (La.App. 3d Cir.1985); Malbrough v. Wheat, 428 So.2d 1110 (La.App. 1st Cir. 1983); Schmidt v. Estate of Choron, 376 So.2d 579 (La.App. 4th Cir.1979). In other words, a plaintiff must be an "insured" under auto liability coverage to be entitled to UM coverage.
In Howell v. Balboa Ins. Co., 564 So.2d 298 (La.1990), this Court held that:
UM coverage attaches to the person of the insured, not the vehicle, and that provision of UM coverage purporting to limit insured status to instances involving a relationship to an insured vehicle contravenes LSA-R.S. 22:1406(D). In other words, any person who enjoys the status of the insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply be reason of having sustained injuries by an uninsured/underinsured motorist.
Id. at 301-02 (emphasis added). As such, any determination of whether a plaintiff is entitled to UM benefits must follow a determination that the plaintiff is an insured for purposes of auto liability insurance coverage.
Accordingly, the outcome of this opinion hinges upon whether Magnon enjoyed the status of insured for purposes of auto liability coverage under the policy issued by Vigilant. Before determining whether Magnon was an insured, it is appropriate to review several well-settled principles of insurance policy interpretation. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. La.C.C. art.2045.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Ins. Guar. Ass'n, 630 So.2d at 763 (collecting cases). Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the *197 policy obligations they contractually assume. Id.
Yet, if the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. La.C.C. art 2046. When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. Louisiana Ins. Guar. Ass'n, 630 So.2d at 764.
With these settled principles of construction in mind, we turn to the contractual terms of the Vigilant policy to determine whether Magnon was an insured. The Vigilant policy is a CGL policy providing comprehensive general liability coverage with a provision for automobile liability insurance for use of non-owned and hired automobiles. According to Magnon, pursuant to the general liability portion of the Vigilant policy, the plaintiff qualifies as an insured because he was an employee in the course and scope of his employment at the time of the accident.[4] Specifically, the general liability portion of the policy provides that an insured includes "[y]our employees, other than your executive officers, but only for acts within the scope of their employment by you." However, the general liability portion of the policy expressly states that:
This insurance does not apply to: ... bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any ... auto which any insured owns, operates rents or borrows. Use includes operation and loading or unloading.
Magnon fails to address this provision in his briefs, and we know of no reason why it does not clearly and unambiguously exclude Magnon from coverage under the general liability portion of the Vigilant policy. One policy provision is not to be construed separately at the expense of disregarding other policy provisions. Here, Phelps Dunbar and Vigilant clearly intended to exclude from coverage under the general liability portion of the policy Magnon's use of his own auto. Thus, we find that Magnon is not entitled to UM coverage under the general liability portion of the Vigilant policy, as that portion does not entitle him to liability coverage for use of a car.
We next turn to determining whether Magnon is an insured entitled to UM coverage under the Non-Owned and Hired Auto Liability section of the CGL policy. Magnon, State Farm, and LIGA contend that sections 2(a) through 2(e) are each independent, mutually exclusive definitions of insured, and that section 2(d) serves to include in that definition employees while moving property to or from a covered auto. Therefore, it is irrelevant that section 2(b) excludes employees from the definition of insured if they are using a vehicle owned by them or a member of their household. We disagree.
Section 2(d) excepts from the definition of insured "anyone other than your employees... while moving property to or from a covered auto." Although section 2(d) serves to except a broad class of claimants from the definition of "insured" (all persons not employees, partners, lessees or borrowers or their employees), it does not except from that definition employees of the named insured while moving property to or from a "covered auto." This does not necessarily mean such employees are included in the definition of "insured," though. Rather, such employees are simply not excluded from the definition of insured by section 2(d). This is evident from the construction of the definition of insured, which provides that "anyone else [is an insured] except ... anyone other than your employees [i.e., non-employees]... while moving property to or from a covered auto." (emphasis added). Thus, under section 2(d), employees while moving property to or from a covered auto simply have not been excepted from the *198 definition of "anyone else." Section 2(d) does not, however, prescribe their inclusion in the definition of "anyone else." Rather, employees may be excluded by any of the other subsections, and are in fact excluded by section 2(b) if they are using with Phelps Dunbar's permission a covered auto which they own. To hold otherwise would defeat the intent of the parties by treating exclusions as inclusions. If such were the case, then failure of any of the subsections to exclude a person from the definition of "anyone else" would mean that such kind of person would be automatically included in that definition. Accordingly, assuming Magnon was moving property to or from the car he owned and was driving, then section 2(d) simply does not except him from the definition of "anyone else."
On the other hand, section 2(b) of the policy excepts from the definition of "anyone else" "your employee if the covered auto is owned by that employee or a member of his or her household," i.e., a Phelps Dunbar employee if he or a member of his household owns the auto. Given the facts of the case at bar, Magnon undisputably fits within the exception to insured status of section 2(b). At the time of the accident, he was acting with the permission of Phelps Dunbar, and operating a car he owned. Thus, he was not an insured under the Non-Owned and Hired Auto Liability section of the CGL policy. Accordingly, we reject the reasoning of the court of appeal that section 2(d) is somehow an exception to the exclusion set forth in section (2)(b), and the reasoning of Magnon, State Farm and LIGA that section 2(d) includes Magnon in the definition of insured.
Our interpretation of sections 2(b) and 2(d) is consistent with the purpose of these sections. "The apparent purpose of the [limitation in section 2(b) ] is to provide the named insured protection for liability arising out of the use of such vehicles, but to preclude coverage for the owner who should have provided liability coverage for his own vehicle." McKenzie & Johnson, supra, § 58, at 164 (emphasis added). On the other hand the purpose of the limitation in section 2(d) is "to limit the persons provided coverage as omnibus insureds with respect to loading and unloading the insured vehicle [the non-owned auto] to employees of the named insured." Id. § 66, at 191-92 & n. 5. Under section 2(b), employees driving covered autos owned by them or members of their families are not liability insureds. On the other hand, an employee moving property with the permission of Phelps Dunbar to or from a covered auto (one not owned by Phelps Dunbar) not owned by the employee or a member of his family remains a liability insured because he is not excepted from the definition by either sections 2(b) or 2(d). Thus, the named insured, Phelps Dunbar, does not have to pay the insurance premium for all of its employee-owned cars, but an employee remains covered (unless, of course, he is excepted by a section other than 2(b) or 2(d)) while moving property to or from a covered auto which he or a family member does not own, and thus one he should not have had to and/or did not insure.
Magnon further argues in the alternative that, even if section 2(d) does not clearly include in the definition of "insured" an employee like Magnon while moving property to or from a covered auto, then sections 2(b) and 2(d) are at the very least ambiguous and therefore must provide UM coverage. Again, we disagree. Magnon first asserts that these sections are ambiguous because they provide liability coverage to him in one instance while moving property to or from a covered autobut not anotherif the covered auto is owned by him or a member of his household. Having decided here-in-above that sections 2(a) through 2(e) do not affirmatively grant or provide coverage, but rather that they except certain persons from coverage, we find Magnon's argument to be without merit.
*199 Magnon further contends that sections 2(a) through 2(e) are ambiguous because it is unclear whether they act as exclusions or as alternative, independent definitions. Again, having already interpreted these subsections as excluding Magnon from the definition of insured, we find this argument to be without merit.
Magnon finally contends that the definition of insured under the non-owned and hired auto portion of the policy is ambiguous because it conflicts with the general liability portion of the policy, which provides liability coverage for employees within the scope of their employment. We also find this argument to be meritless, as we have already determined that the general liability portion of the policy validly excludes bodily injury and property damage arising out of the ownership, maintenance, use, or entrustment to others of any auto which any insured owns, operates, rents, or borrows. No conflict exists with the coverage afforded in the general liability portion of the CGL policy and the non-owned and hired auto liability section of the CGL policy.
For the foregoing reasons, we find that the court of appeal erred as a matter of law in affirming the trial court's grant of State Farm's motion for summary judgment and in denying Vigilant's motion for summary judgment. Magnon never achieved insured status for auto liability coverage under the Vigilant policy, and thus is not entitled to UM coverage. Accordingly, we reverse the court of appeal judgment which affirmed the district court's summary judgment in favor of State Farm; also, we reverse the court of appeal and district court judgments which denied summary judgment to Vigilant, and we grant summary judgment in favor of Vigilant dismissing all claims against it. Also, because none of the parties sought a writ of certiorari to review the summary judgment dismissal of LIGA or otherwise raised as error that dismissal, we decline to consider the correctness of that decision. See Sinitiere v. Lavergne, 391 So.2d 821, 827 (La.1980) ("[A] judgment will not be amended by this Court to benefit a party who did not apply for certiorari.").

DECREE
SUMMARY JUDGMENT IN FAVOR OF STATE FARM REVERSED; SUMMARY JUDGMENT IN FAVOR OF VIGILANT INSURANCE COMPANY DISMISSING ALL CLAIMS AGAINST IT GRANTED.
NOTES
[*] Lemmon, J., not on panel. See Rule IV, Part 2, § 3.
[1] Collins' insurer was insolvent.
[2] State Farm settled with plaintiffs for $100,000.00, the full amount of UM coverage provided by the policy it issued to Magnon.
[3] The court of appeal does not discuss the period of time for which Magnon has UM coverage. The court of appeal found that Magnon was covered while driving a covered auto under section 2(d), even though he was no longer moving property to or from that auto. The court of appeal, under its reasoning, does not explain when such UM coverage would terminate, if ever.
[4] Neither State Farm nor LIGA advances this argument.