783 So.2d 453 (2001)
Laura ELORZA and Sergio Elorza, Individually, and on Behalf of Their Minor Child, Kayla Elorza
v.
Belinda Massey, Wife of/and William Jessie MASSEY, Allstate Insurance Company, Sylvia Scheiter, Individually and as Natural Tutrix of Her Minor Child, Kurt Scheiter, and Abc Insurance Company
No. 00-CA-313.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 2001.
William W. Hall, William W. Hall and Associates, Metairie, Counsel for plaintiffs-appellees.
*454 James L. Donovan, Jr., Vance W. Ott, Donovan & Lawler, Metairie, Counsel for defendant-appellant, Allstate Insurance Company.
Court composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD, CLARENCE E. McMANUS, WALTER J. ROTHSCHILD and H. CHARLES GAUDIN, Pro Tempore.
McMANUS, J.
Defendant Allstate appeals a trial court judgment finding that it provided coverage for injuries a child sustained at a day care facility. For the reasons that follow, we reverse the judgment against Allstate Insurance Company.
Plaintiffs, Laura and Sergio Elorza, filed suit individually and on behalf of their minor child Kayla Elorza for injuries that she sustained while in the care of Mrs. Belinda Massey at her day care center. Named in the suit are Mrs. Massey, her husband, Mr. William Jessie Massey, and their homeowner's insurer, Allstate Insurance Company. Also named in the suit are Mr. and Mrs. Karl Scheiter, parents of Kurt Scheiter, the other child involved the incident, and their homeowner's insurer, State Farm Fire and Casualty Company.
After trial on the merits, the trial court found Mrs. Massey solely responsible for the injuries sustained by Kayla Elorza and further found that Allstate Insurance Company does provide coverage for the incident. The trial court dismissed, with prejudice, the claims against Mr. and Mrs. Scheiter. Allstate appeals that judgment. On appeal, Allstate Insurance Company alleges these trial court errors:
1. The trial court erred in finding that the Allstate homeowner's policy issued to Mrs. Massey provided coverage for injuries sustained during the business operations in the home.
2. The trial court erred in admitting a copy of a 1988 Allstate homeowner's insurance policy that did not contain a declaration sheet and that was not identified as a policy which provided coverage on the date of loss.
3. The trial court erred in awarding excessive general and special damages and an award for future medical expenses.
4. The trial court erred in finding that Mr. and Mrs. Elorza are entitled to damages for loss of consortium.

FACTS
Mrs. Massey ran a day care business, Belinda's Child Care, in her home in Jefferson Parish. At the time the instant accident occurred, Kayla Elorza was being watched by Mrs. Massey, as was Kurt Scheiter. The children under Mrs. Massey's care were allowed to play in the back yard of the Masseys' home, and the accident occurred when Kayla and Kurt were playing in the yard. On May 3, 1996, Kayla was playing with Kurt in the back yard, with Massey present. Massey testified that Kayla and Kurt squabbled over a toy bowl; she attempted to quiet the quarrel, then watched as both of the children climbed onto a trampoline located in the yard. When Massey went into the house to check on her other charges, she left Kayla and Kurt "jumping from side to side" on the trampoline. While indoors, she heard a scream, and quickly went outdoors to check on the two. When she arrived outdoors, she saw Kayla on the ground, crying.
Kayla testified that Karl had pushed her down on the trampoline. Kurt testified that Kayla had fallen as he tried to "jerk" the toy bowl from her hands.
Immediately after the accident, Kayla complained of pain to her right knee. *455 Mrs. Massey carried Kayla indoors to the sofa and applied ice to Kayla's right knee. Mrs. Massey notified Mrs. Elorza, and both Mr. and Mrs. Elorza took Kayla to the hospital. Kayla was diagnosed with a fracture of her right knee, just below the growth plate.
Massey testified that the day care was run entirely from her home. At the time of the accident giving rise to this suit, she had been running the day care for some eight years. Mr. and Mrs. Elorza and Mr. and Mrs. Scheiter were compensating Mrs. Massey to baby-sit Kayla and Kurt, each at a rate of forty dollars a week; Massey stated that she did report the income from the business on tax returns. While Massey did not have a state permit, she did have a Jefferson Parish license.
Massey testified that though the trampoline had been purchased "primarily" for family use, the children she watched were allowed to use the trampoline if their parents had signed a permission slip. She also stated that Kayla's parents had not signed such a slip. Massey acknowledged that the manual which had been provided with the trampoline included warnings against allowing two children to use it at once, and she admitted that having allowed such use was a "violation" of the instructions. Finally, Massey testified that she had not instructed either of the children to get off of the trampoline before the accident happened.

COVERAGE BY HOMEOWNER'S INSURANCE POLICY
Allstate argues that the trial court should have applied a "business exclusion" contained in the Masseys' homeowner's policy to deny coverage in the instant situation. Mr. and Mrs. Elorza argue that the use of the trampoline was not part of Mrs. Massey's day care business, and therefore, the business exclusion does not apply.
An insurance policy is an agreement between parties and should be interpreted using ordinary contract principles. Ledbetter v. Concord General Corp., 95-0809, at p. 4 (La.1/6/96), 665 So.2d 1166, 1169. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. LSA-C.C. art.2046; Magnon v. Collins, 98-2822, at p. 7 (La.7/7/99), 739 So.2d 191, 197. Further, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480, at pages 3-4 (La.4/11/94), 634 So.2d 1180, 1183; Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d 190, 192 (La.1974); Sea Trek, Inc. v. Sunderland Marine Mut. Ins. Co., Ltd., 99-893, at pages 7-8 (La.App. 5 Cir. 2/16/00), 757 So.2d 805, 810. And finally, regarding such limitations, we note that it is the insurer's burden to show that a loss falls within a policy exclusion. Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250, 1252 (La.1993).
The insurance policy enforced in this case provided coverage from August 5, 1995, through August 5, 1996. The policy provided the following:
Definitions Used In This Policy
6. "Business" means:
a) any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an insured person or relative of an insured person for economic gain is also a business.
. . . .
Coverage X

*456 Family Liability Protection
Losses We Do Not Cover Under Coverage X:
12. We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person.
The phrase "arising out of" implies an element of causality, though not necessarily the proximate cause. Speziale v. Kohnke, 194 So.2d 485, 487-8 (La. App. 4 Cir.1967).
Massey does not argue that the exclusion in the policy is unclear or ambiguous. Rather, she argues that the trampoline was not used as part of her day care businessshe argues that the exclusion is inapplicable. There is no question, however, that Allstate met their burden to show that the above cited exclusion applies to Kayla's damages: there is no question that the damages "arose out of" Massey's operation of her day care business.
Massey does not deny that she was operating a business in her home; it is undisputed that her business was operating a day care. The accident in question occurred during the course of Massey's ordinary working day, while she was performing her customary business tasks. Kayla was present at Massey's house because Massey's business was an "at home" business; Kayla was at Massey's house because it was Massey's business to care for a group of children. Kayla was hurt while she was tussling with another one of the children Massey was paid to watch. And the fact that the accident arose out of Massey's negligence on the job does not negate the fact that it arose out of her business or somehow render inoperable the business exclusion contained in her homeowner's policy.
Massey argues that because the trampoline was purchased "primarily" for family use, it was not part of the equipment used for the day care. This argument is unavailing, however. It is defeated by Massey's own testimony: Massey herself testified that the day care charges were allowed to use the trampoline. Need we hear any more? If the trampoline was not used as part of Massey's business, it was Massey's business to make the trampoline inaccessible to her day care children.
Finally, we note that Jackson v. Frisard, 96-0547 (La.App. 1 Cir. 12/20/96), 685 So.2d 622, cited by Massey, is also unavailing to avoid application of the business exclusion here. We find Jackson to be factually distinguishable in this respect: in Jackson, application or not of the business exclusion depended on a determination of whether the insured's horseplay activities were business related. Here, of course, Massey is the insured. And while there seems to be no question that Kayla and Karl were engaged in horseplay when the accident occurred, this fact has no bearing on whether or not Massey was conducting her business, out of her home, when the accident occurred.

REMAINING ASSIGNMENTS OF ERROR
Because we reverse the trial judge's finding that the Allstate policy in question provided coverage for Kayla's damages, we need not consider Allstate's remaining assignments of error. Massey was not cast in judgment individually, nor was any other named defendant, and we see no need to review assignments of error relating to elements of damages or quantum when there is no insurance coverage available.
Therefore, for the above reasons, we reverse the finding that the Allstate policy *457 in question provided coverage for the cause of action sued on.
REVERSED.