# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**18-395**


**KERRI A. LATOUR, ET AL.**

**VERSUS**

**ALLSTATE INS. CO., ET AL.**


**********

APPLICATION FOR SUPERVISORY WRITS FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2015-4132-F
HONORABLE DAVID MICHAEL SMITH, DISTRICT JUDGE

**********

**SHANNON J. GREMILLION**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, Elizabeth A. Pickett, Shannon J. Gremillion, and Candyce G. Perret, Judges.

Cooks, Judge, dissents and assigns reasons.
Pickett, Judge, dissents for the reasons assigned by Judge Cooks.

**REVERSED AND RENDERED.**

**John William Penny, Jr.**
**Christopher Shannon Hardy**
**Penny & Hardy**
**600 Jefferson Street, Suite 601**
**Lafayette, LA 70502**
**(337) 231-1955**
**COUNSEL FOR DEFENDANT/APPLICANT:**
     **Allstate Insurance Company**

**Christopher Parnell Lawler**
**Donovan & Lawler**
**4640 Rye Street, Suite 100**
**Metairie, LA 70006**
**(504) 454-6808**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **Debbie Derouen**

**Michael A. Rainey**
**Attorney at Law**
**P. O. Box 80067**
**Lafayette, LA 70598**
**(337) 504-5558**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
     **Stephen E. Latour, Kerri A. Latour, Individually and on behalf of**
     **Averi G. Latour**

**GREMILLION, Judge.**

Steven and Kerri Latour filed suit against Debbie Derouen and Allstate Insurance Company, her homeowners' insurer, seeking damages for bruises and bite marks suffered by their fifteen-month-old daughter, Averi Latour, on August 25, 2014, while she was in the care of Ms. Derouen. Ms. Derouen provided daycare services for children in her home in exchange for compensation. On the day Averi was bitten, Ms. Derouen was caring for two of her grandchildren in addition to six other children, including Averi. When the children were napping, Ms. Derouen heard a child crying and went to check on the child. Upon entering the room where the children were napping, she found Averi crying and two other children, one sitting on either side of her. Averi had been bitten on both of her legs and her sides. One of the children sitting by Averi was Ms. Derouen's grandchild; the other child was one she regularly cared for. Ms. Derouen's testimony indicates Averi may have been bitten by either or both of these two children.

Allstate filed a motion for summary judgment, seeking to have the Latours' claims against it dismissed. Allstate based its motion on a provision of its policy which excludes liability coverage for injuries "arising out of . . . business activities of any insured." It argues that because Ms. Derouen was providing daycare services for Averi when Averi was injured by another child in her care, Averi's injuries arose out of her business activities; therefore, the Latours' claims are excluded from the personal liability coverage provision of its policy.

The Latours asserted to the trial court that Averi was bitten by Ms. Derouen's grandchild and that because Allstate's policy definition of "business" excepts daycare services for an insured's relatives from the definition of business activities, the exclusion is inapplicable. Therefore, they urged that a genuine issue of material fact exists as to whether Averi's injuries arose out of Ms. Derouen's daycare

business and that this issue precludes summary judgment. They also argued that language contained in Allstate's premises liability exclusion confirms coverage for Averi's injuries or, in the alternative, creates an ambiguity which also precludes summary judgment.

The trial court denied Allstate's motion, finding that the difference between the pertinent language of the personal liability exclusion as compared to the premises liability exclusion of the policy "create[d] an issue." Allstate filed a writ application, seeking reversal of the trial court's judgment and the grant of summary judgment in its favor. We granted writs and ordered briefing. *Latour v. Allstate Ins. Co.*, 18-395 (La.App. 3 Cir. 8/9/18) (unpublished opinion). For the reasons that follow, we grant Allstate's requested relief.

## ANALYSIS

"Since the denial of a motion for summary judgment is an interlocutory ruling from which no appeal may be taken, the only practical remedy available to avoid a possibly useless trial on the merits is to request that the appellate court exercise its supervisory jurisdiction to review the propriety of this ruling." *Breaux v. Cozy Cottages, LLC*, 14-597, p. 4 (La.App. 3 Cir. 11/12/14), 151 So.3d 183, 187. "Ordinarily, an application for supervisory writs is the appropriate vehicle for the review of an interlocutory judgment." *McGinn v. Crescent City Connection Bridge Auth.*, 15-165, p. 4 (La.App. 4 Cir. 7/22/15), 174 So.3d 145, 148.

> On appeal, summary judgments are reviewed de novo. *Magnon v. Collins,* 98–2822 (La.7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id.* This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). This means that judgment must be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id.* If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id.*

2

Material facts are those that determine the outcome of the legal dispute. *Soileau v. D & J Tire, Inc.*, 97–318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied*, 97–2737 (La.1/16/98), 706 So.2d 979. In deciding whether facts are material to an action, we look to the applicable substantive law. *Id.* Finally, summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966(A)(2).

*Am. Zurich Ins. Co. v. Caterpillar, Inc.*, 12-270, pp. 4-5 (La.App. 3 Cir. 10/3/12), 99 So.3d 739, 742-43. When considering a motion for summary judgment, the judge should not weigh the evidence or determine the truth of the matter; instead, he must determine whether there is a genuine issue of triable fact. *Larson v. XYZ Ins. Co.*, 16-745 (La. 5/3/17), 226 So.3d 412. "All doubts should be resolved in the non-moving party's favor." *Id*. at 416.

An insurer seeking to avoid coverage through summary judgment bears the burden of proving that some provision or exclusion applies to preclude coverage. The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved on summary judgment. However, summary judgment declaring a lack of coverage under an insurance policy may only be rendered if there is no reasonable interpretation of the policy when applied to the undisputed material facts shown by the evidence supporting the motion under which coverage could be afforded.

*Chenevert v. Allstate Prop. & Cas. Ins. Co.*, 17-56, p. 4 (La.App. 3 Cir. 10/11/17), 229 So.3d 937, 940 (citations omitted).

Allstate's motion for summary judgment is premised upon the following pertinent provisions of its policy titled "Coverage X Family Liability Protection":

Allstate will pay damages for which an **insured person** becomes **legally obligated** to **pay because of bodily injury** or **property damage arising** from an occurrence to which this policy applies, and is covered by this part of the policy.

. . . .

**Losses We Do Not Cover Under Coverage X:**

. . . .

12. We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person.

Recently, in *Green ex rel. Peterson v. Johnson*, 14-292, p. 4 (La. 10/15/14), 149 So.3d 766, 770-71 (citation omitted), our supreme court reviewed the principles of insurance contract interpretation and explained:

3

[C]ertain elementary legal principles apply in analyzing an insurance policy. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent; this analysis is begun by reviewing the words of the insurance contract. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and courts must enforce the contract as written. The determination of whether a contract is clear or ambiguous is a question of law.

"Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured." *Ledbetter v. Concord Gen. Corp.*, 95-809, p. 4 (La. 1/6/96), 665 So.2d 1166, 1169, *amended*, 95-809 (La. 4/18/96), 671 So.2d 915. Nonetheless, the rule of strict construction does not "authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists[.]" *Muse v. Metro. Life Ins. Co.*, 193 La. 605, 614, 192 So. 72, 75 (1939). Moreover, insurance companies have the right to limit coverage in any manner they choose, if the limitations imposed do not conflict with statutory provisions or public policy. *Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180.

The Latours argue that the focus should be on the source of their child's injuries. Because the probable source of the child's bite was not a child for whose care the homeowner was compensated, the Latours argue that the injury did not "arise out of" the operation of a daycare facility in Ms. Derouen's home per the terms of the Allstate policy. We disagree.

Insurance is purchased to protect the insured against exposure from liability. This principle is embodied in the insuring agreement, which, in this case, provides, "Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes **legally obligated to pay because of**

4

**bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy." Liability insurance payment is always predicated upon the *insured's* legal liability. In this matter, the allegations against the homeowner involve failure to supervise "the minor child," which, throughout the petition, refers to the injured child. The risk that a minor child would be injured at the operator's home is precisely the risk Allstate avoided in excluding coverage for operating a daycare. The acts or omissions of the homeowner/insured is the proper focus in determining whether the exclusion applies. This approach mirrors those previously used in similar cases, and it provides a more concrete foundation upon which subsequent homeowners and insurers can structure their dealings in the future.

*Elorza v. Massey*, 00-313 (La.App. 5 Cir. 3/14/01), 783 So.2d 453, involved a child injured at a home-based daycare facility while playing on a trampoline that had been purchased by the homeowner for the use of her children. However, she allowed the daycare charges to play on the trampoline. The business pursuits exclusion was held to exclude coverage:

> The accident in question occurred during the course of Massey's [the homeowner's] ordinary working day, while she was performing her customary business tasks. Kayla [the injured child] was present at Massey's house because Massey's business was an "at home" business; Kayla was at Massey's house because it was Massey's business to care for a group of children. Kayla was hurt while she was tussling with another one of the children Massey was paid to watch. And the fact that the accident arose out of Massey's negligence on the job does not negate the fact that it arose out of her business or somehow render inoperable the business exclusion contained in her homeowner's policy.
>
> Massey argues that because the trampoline was purchased "primarily" for family use, it was not part of the equipment used for the day care. This argument is unavailing, however. It is defeated by Massey's own testimony: Massey herself testified that the day care charges were allowed to use the trampoline. Need we hear any more? If the trampoline was not used as part of Massey's business, it was Massey's business to make the trampoline inaccessible to her day care children.

5

*Id.* at 456.

In the matter of *Felder v. Despinasse*, 564 So.2d 1331 (La.App. 4 Cir. 1990), the court of appeal employed a far simpler analysis in determining whether the exclusion should apply. In fact, other than particulars of the day-to-day operation of the in-home daycare, the court's only discussion of the facts was that the plaintiffs' child had broken his arm while in the homeowner's care. The court nevertheless concluded:

> While there remains doubt as to how Stephen broke his arm, he would not have broken it inside the Despinasses' home had he not been placed there in the care and control of Mrs. Despinasse because she was operating a day care center on the premises. We find that the operation of a day care center for compensation is a business pursuit excluded from coverage under the language of the Allstate policy.

*Id.* at 1332.

In *MVG v. Lucas*, 590 So.2d 1322 (La.App. 1 Cir. 1991), the homeowner operated a daycare from her home. One of her charges was sexually molested by the homeowner's major son, and the parents sued, alleging that the homeowner failed to properly supervise the child entrusted to her care—the same allegations present in the matter at bar. The homeowner's insurer filed a motion for summary judgment, which was, of course, decided under the former standards governing summary judgment. The court held:

> It is undisputed that Delores Lucas operated a day care center for compensation in her home. Baby-sitting was her business. Supervising CEG was Delores Lucas' job. The act which Delores Lucas failed to do, properly supervise CEG, was pursuant to the business. The business was run in Delores Lucas' home and injuries arising out of the business were excluded from her homeowner's coverage.
>
> The act of failing to supervise CEG was not a non-business activity and cannot be compared, as argued by MVG, to activities ordinarily incidental to non-business pursuits such as playing a practical joke or preparing coffee for a social guest. The exception to the exclusion does not apply.

6

*Id*. at 1324 (footnotes omitted). The agency of injury is irrelevant to the inquiry into coverage in this case. What is relevant are the alleged actions or omissions of the insured upon which liability is asserted and whether those actions further the operation of the daycare. In the context of the present case, the omission for which the Latours seek to impose liability on Ms. Derouen is her negligent supervision of their minor daughter. Regardless of whether the child was bitten by Ms. Derouen's grandchild or another child, it is beyond dispute that if Ms. Derouen were not operating a daycare from her home, the Latours' child would not have been bitten.

The ruling of the trial court denying Allstate Insurance Company's motion for summary judgment is reversed. Judgment in favor of Allstate Insurance Company is rendered, dismissing the demands of Stephen E. Latour and Kerri A. Latour, individually and on behalf of their minor child, Averi G. Latour. All costs of these proceedings are taxed as costs to Stephen E. Latour and Kerri A. Latour, individually and on behalf of their minor child, Averi G. Latour.

**REVERSED AND RENDERED.**

KERRI A. LATOUR, ET AL.

VERSUS

ALLSTATE INS. CO., ET AL.

**COOKS, J., dissents.**

Steven and Keri Latour (Plaintiffs) sued Debbie Derouen (Defendant) and Allstate Insurance Company (Allstate) as her homeowner's insurer. Plaintiffs allege their child, Averi, was injured while in daycare at Defendant's residence. It is undisputed that Defendant operates a daycare business out of her home and was being paid by Plaintiffs to keep their child daily. It is also undisputed that Defendant was watching over two of her grandchildren on the day of the alleged incident and they were not there as paying customers of her daycare business. Though it is not disputed that Averi had bite marks on her body, it is in dispute as to which child or children inflicted the bites on Averi. Defendant testified in deposition she did not see which child bit Averi but when she came into the room in response to hearing a child crying she observed one of her grandchildren sitting next to Averi and that grandchild was laughing while Averi was crying. She therefore assumed her grandchild bit Averi. She also said another child was near Averi on the opposite side.

Allstate filed a motion for summary judgment asserting its homeowner policy contains a specific business exclusion which states: "We do not cover bodily injury or property damage *arising out of* the past or present business activities of an insured person." (emphasis added) Allstate asserts this language in the policy applies to the situation at hand regardless of whether the child who bit Averi is one of Defendant's grandchildren, who by definition in the Allstate policy were not part of her day care business, or one of the other daycare customers' children. Allstate maintains

Defendant had a duty to protect Averi from harm and she breached that duty, and that such "arises out of" the operation of her daycare business. The trial court denied Allstate's motion for summary judgment because it found there are competing provisions in the insurance policy regarding coverage, the application of which is affected by whether Averi was bitten by one of Defendant's grandchildren or one of the daycare customers or both. This, said the trial judge, "creates an issue" and thereby denied summary judgment. I agree with the trial judge and for the reasons that follow I respectfully dissent from the majority opinion reversing the trial court judgment.

> Appellate courts review a judgment granting or denying a motion for summary judgment de novo. *Bonin v. Westport Ins. Corp.,* 05–0886, p. 4 (La.5/17/06), 930 So.2d 906, 910. Thus, appellate courts must ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Hood v. Cotter,* 08–0215, 08–0237, p. 9 (La.12/2/08), 5 So.3d 819, 824.

*C & C Energy, L.L.C. v. Cody Investments, L.L.C.,* 09-2160 p. (La. 7/6/10), 41 So. 3d 1134, 1137.

Additionally, the Louisiana State Supreme Court has also held:

> Summary judgment declaring a lack of coverage under an insurance policy may not be rendered **unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.** *Westerfield v. LaFleur,* 493 So.2d 600, 605 (la.1986). . .

> The purpose of liability insurance is to afford the insured protection from damage claims. *Policies therefore should be construed to effect, and not to deny, coverage. Thus**, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer**, and, if the language of the exclusion is subject to two or more reasonable interpretations,* **the interpretation which favors coverage must be applied.** *Garcia v. St. Bernard School Bd.,* 576 So.2d 975, 976 (La.1991); *Breland v. Schilling,* 550 So.2d 609, 610 (La.1989).

*Reynolds v. Select Properties, Ltd.,* 93-1480 (La. 4/11/94), 634 So. 2d 1180, 1183 (emphasis added).

Reviewing this record de novo I do not believe this court can conclude that Allstate is entitled to judgment *as a matter of law*. I also believe there are several unresolved genuine issues of fact that cannot be determined on summary judgment. First and foremost, we must understand from the outset that by the very terms of Allstate's policy language ("arising out of") the exclusion on which Allstate relies *does not turn on Defendant's duty owed to Averi as a day care customer*, as the majority finds, but, rather, turns on the "**source of the injury**" to Averi. *See Lucas v. Deville*, 385 So.2d 804, 820 (La.App. 1979), *writ refused*, 386 So.2d 357 (La.1980), and *writ refused*, 386 So.2d 359 (La.1980) (emphasis added). As one sister circuit court has noted "[t]he phrase 'arising out of' implies an element of causality…" *Elorza v. Massey*, 00-313 (La.App. 5 Cir. 3/14/01), 783 So.2d 453, 456. Section X of the policy excludes coverage for any bodily injury or damage to property "**arising out of**" the business activities of its insured. By definition in Allstate's policy, taking care of a grandchild **is not a business activity**. The majority acknowledges this fact. As Defendant asserts, the "source" of Averi's injuries was likely Defendant's grandchild, thus the injuries to Averi did not "arise out of" Defendant's business activities. The evidence presented in support of the motion for summary judgment as to who bit Averi is equivocal. But more importantly, there is no evidence in support of Allstate's motion for summary judgment that Averi was only bit by another paying customer's child. Without that evidence Allstate fails to show that Averi's injuries *arose out of* Defendant's day care business and are thus subject to the policy exclusion. The majority finds it is the breach of Defendant's duty to Averi as her daycare client that determines whether the injury to Averi "arose out of" Defendant's business activities. This finding is incorrect**.** By use of the phrase "arising out of" Allstate's policy bases liability for Averi's injuries on *the source of Averi's injuries*, not on the grandmother's duty owed to either child. If the source of Averi's injuries is one of Defendant's grandchildren, who by definition in

3

the Allstate policy are not part of Defendant's business activities, then the Allstate exclusion relied on does not apply. The injuries would not "arise out of" the daycare business. I reiterate that neither the trial court, nor this court on de novo review, can determine from the evidence submitted on summary judgment who bit Averi, or whether Defendant failed to meet any legal duty, without making credibility determinations and resolving competing factual allegations.

Allstate's argument is belied by its own policy provisions.

In *Reynolds*, our state supreme court explained:

> An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Smith v. Matthews,* 611 So.2d 1377, 1379 (La.1993). The parties' intent, as reflected by the words of the policy, determine the extent of coverage. La.Civ.Code art. 2045; *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.,* 93–0911, p. 5, 630 So.2d 759, 763 (La.1994). Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *Interstate,* 630 So.2d at 763; La.Civ.Code art. 2047. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Interstate,* 630 So.2d at 763. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. *Central La. Elec. Co. v. Westinghouse Elec. Corp.,* 579 So.2d 981, 985 (La.1991). However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. *Interstate,* 630 So.2d at 763–64.

*Reynolds*, 634 So.2d at 1183.

Allstate's policy submitted in evidence in support of its motion for summary judgment provides in pertinent parts (emphasis added):

"Business" means:

a) Any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. *The providing of home day care services to **other than an insured person or relative of an insured person** for economic gain is also a business.*

**Section II-Family Liability and Guest Medical Protection**

**Coverage X**

**Family Liability Protection**

**Losses We Cover Under Coverage X:**

Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

**Losses We Do Not Cover Under Coverage X:**

1.  We do not cover any bodily injury or property damage *intended by, or which may reasonably be expected to result from* the intentional or criminal acts or omissions of the insured person…

12. We do not cover bodily injury or property damage *arising out of* the past or present business activities of an insured person.

15. We do not cover any liability an insured person assumes *arising out* of any contract or agreement.

16. We do not cover bodily injury or property damage *caused by* war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

**Coverage Y**
**Guest Medical Protection**

**Losses We Cover Under Coverage Y:**

Allstate will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services, ambulance, hospital, licensed nursing and funeral services…

Each person who sustains bodily injury is entitled to this protection when that person is:

1.  On the insured premises with the permission of an insured person, or

2.  Off the insured premises, if the bodily injury:

a) *arises out of* a condition on the insured premises;
b) is *caused by* the activities of an insured person or a residence employee;
c) is *caused by* an animal owned by or in the care of an insured person; or
d) is *sustained by* a residence employee.

**Losses We Do Not Cover Under Coverage Y:**

1. We do not cover any bodily injury *intended by or which may reasonably be expected to result from* the intentional or criminal acts or omissions of the insured person…

10. We do not cover bodily injury *arising out of* the past or present business activities of the insured person.

14. We do not cover bodily injury which, *in whole or in part, arises out of, is aggravated by or results from* mold, fungus, wet rot or dry rot.

The policy language indicates that it is the "providing of home day care services to **other than an insured person or relative** of an insured person for economic gain" that constitutes a business. Thus, Defendant's taking care of her own grandchildren at her home does not constitute operating a day care business, i.e. it is not a business activity. Allstate does not argue otherwise and the majority agrees. Defendant's grandchild was placed under her care and supervision and she was responsible for that grandchild's actions. Any failure in Defendant's duty to supervise her grandchild[1] (if such failure is factually established) makes her legally

---

[1] Although a person who undertakes control and supervision of a child is not an insurer of the safety of the child, he is required to use reasonable care commensurate with the reasonably foreseeable risk of harm to which the child might be subjected while under his control and supervision. *Blackledge v. Font,* 2006–1092, p. 10 (La.App. 1 Cir. 3/23/07), 960 So.2d 99, 104; *Freeman v. Wilcox,* 303 So.2d 840, 842 (La.App. 1 Cir.1974), *writ denied,* 307 So.2d 630 (La.1975)…

The level of supervision "required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances." *Wallmuth,* 2001–1779, 2001–1780 at p. 8, 813 So.2d at 346; *Pierce,* 2002–0139 at p. 4, 836 So.2d at 331. "Constant supervision of all [children or] students is not possible nor required ... to discharge [the] duty to provide adequate supervision." *Id.* To show that a duty to supervise has been breached, the plaintiff must prove that the risk of unreasonable injury was foreseeable, constructively or actually known, *and* preventable by the exercise of the required level of supervision. *Pierce,* 2002–0139 at p. 5, 836 So.2d at 332. If the alleged act of negligent supervision was unforeseeable, that is, it occurred suddenly and without prior warning, the "vast majority" of courts have refused to attribute fault to the accused defendant. *Wallmuth,* 2001–1779, 2001–1780 pp. 9–12, 813 So.2d at 347–49 (and cases cited therein); *Blackledge,* 2006–1092 at pp. 9–12, 960 So.2d at 104–05.

*Gordon v. Cornerstone Assembly of God Church*, 07-1488 pps. 4-5 (La. App. 1 Cir. 3/26/08), 985 So. 2d 762, 765.

responsible for her actions unless otherwise exempted from such responsibility by contract.[2] *But the question of Defendant's duty to Averi and/or her grandchild is not determinative of liability for Averi's injuries. It is the source of the injury, i.e. who bit Averi, that determines liability and a fortiori whether such liability is excluded from coverage.*

It is alleged that the source of Averi's injury is Defendant's grandchild. If this proves to be true at trial then the business exclusion relied on by Allstate will not apply, otherwise the recited policy provision exempting Defendant's grandchildren from inclusion in her business activity would have no meaning. Such an application would also render meaningless the phrase "arising out of" the business activity as such phrase turns on the *source of the injury* which would not be related to Defendant's business activities if that source, i.e. the biter, is Defendant's grandchild. The policy provides coverage for Averi's injuries, as recited above, under Coverage Y because she is a person "on the insured premises with the permission of [the] insured person."

I have included certain provisions of Allstate's policy in this discussion even though they have no direct relation to this case because the language in these provisions demonstrate that Allstate knows how to, and could have, written its business exclusion provision differently if it desired to. If Allstate intended for its business exclusion to reach the actions of Defendant's non-business related invitee (like her grandchild) it could have used language like it used elsewhere in the policy such as the phrase "caused by" used in relation to acts of war, or such as "reasonably expected to result from" like it used in the context of intentional or criminal acts. In

---

[2]    I note that a copy of the one-page contractual agreement signed by the Latours for Aviri's care with Mrs. Derouen states: "I will not hold Debbie Derouen legally responsible for any "accidents/injuries" that my child incurs while in her care." Both parents admit in deposition they signed this agreement.

7

each instance in the policy where Allstate employs the phrase "arises out of" it is clear this reflects the notion of the *source* of the "bodily injury or property damage." For example, under Coverage X, item 7, Allstate does not provide coverage for injury or damage "*arising out of* the negligent supervision by an insured person of any person, or any liability statutorily imposed on any insured person, arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft..." Thus, the *source* of such responsibility is the negligent supervision of any person loading or unloading a watercraft. Likewise, another example is found under Coverage X, item 15, in which Allstate's policy does not cover "any liability an insured person assumes *arising out of* any contract or agreement," clearly making the contract or agreement the *source* of such liability. If we accept Allstate's argument that the source of Averi's injury is Defendant's failure to perform her duty to supervise Averi implicitly required in her contract with the Latours, this provision would be applicable, yet Allstate does not maintain such an assertion. *The only interpretation of this provision and the business exclusion provision that renders both meaningful is that "arising out of" in both instances means causality, i.e. the phrase speaks to the source of the injury.* In the one provision the source of the injury must be the business activity to be excluded and in the other example from the policy the source must be the contract or agreement. The reason neither applies to Defendant's grandchild must be because the policy defines Defendant's care of her grandchild as not part of her day care business and the actions of her grandchild in biting Averi would not arise out of any contract or agreement.

Yet another example is found in Item 14 of the policy regarding mold, fungus, wet rot or dry rot. The policy specifically excludes coverage for bodily injury which "arises out of," in whole or in part, or "results from mold, fungus, wet rot or dry rot." But, as all of us in Louisiana are too well aware, hurricanes can cause much interior

water damage which results in a great deal of mold, fungus or wet rot. Such damage is covered by the homeowner policy despite this typical mold exclusion because the *hurricane is the source* of the mold damage, thus the hurricane related mold damage does not arise out of mold caused by other means.

The majority's reliance on *Elorza v. Massey*, 00-313 (La.App. 5 Cir. 3/14/01), 783 So.2d 453, the trampoline case, is misplaced. In *Elorza,* the source of the injury was the defendant's day care business activity. In that case, Mrs. Massey testified she allowed her day care children to use her trampoline and was well aware the two children were on the trampoline together at the time of the accident. Clearly, the source of the plaintiff's injury in *Elorza* was the insured's business activity. Notably, in *Elorza*, the Louisiana Fifth Circuit found *Jackson v. Frisard*, 96-547 (La.App. 1 Cir. 12/20/96) not applicable because "in *Jackson*, application or not of the business exclusion depended on a determination of whether the insured's horseplay activities were business related." *Elorza* 783 So.2d at 456. The majority ignores this discussion in *Elorza* and ignores the impact of *Jackson* on this case. In *Jackson* the court found the business exclusion policy provision not applicable to Defendant's liability for injuries caused by his horseplay with the plaintiff because the horseplay was not business related even though it occurred during a required training session:

> We construe the policy language in question to provide coverage for acts which by their nature are not associated with the insured's business pursuits, but which are only casually related to the business activities. *See New Jersey Property Liability Guaranty Assoc.,* 174 N.J.Super. at 632, 417 A.2d at 119; *State Farm Fire and Casualty Co. v. National Union Fire Ins. Co.,* 87 Ill.App.2d 15, 230 N.E.2d 513, 516 (Ill.App.1967). The testimony was undisputed that none of the training maneuvers practiced during the session involved striking the back in any manner. Thus, we find Frisard's action of striking Jackson's back was not an activity associated with the defensive training session, but was in this instance only casually related to the business activity of the training session, and ordinarily incident to non-business pursuits. The trial court properly found the 'business pursuits' exclusion of the State Farm policy did not exclude coverage for Jackson's injuries resulting from the incident. We find no inconsistency in the trial court's findings

9

on the issues of vicarious liability and insurance coverage. *Jackson v. Frisard*, 96-0547 p. 18 (La. App. 1 Cir. 12/20/96), 685 So. 2d 622, 631, *writ denied*, 97-0193 (La. 3/14/97), 689 So. 2d 1386, and *writ denied*, 97-0201 (La. 3/14/97), 689 So. 2d 1387. There was additional language in the Farm Bureau policy in *Jackson* that modified the business exclusion which made it clear that the business activities exclusion did not apply to actions "incident to non-business pursuits." Though that provision is not part of the current Allstate policy, it does contain a provision which amounts to the same thing, i.e., it provides that the business activities exclusion does not apply to Defendant and her relatives, which includes her grandchildren. Thus, under the rationale of *Jackson*, and *Elorza* when properly applied, Allstate's business activity exclusion does not apply to injuries caused by Defendant's grandchild while in her care because the Allstate policy defines such as a non-business activity.

For the reasons stated, Allstate is not entitled to summary judgment either as a matter of law or fact. I, therefore, respectfully dissent.

10