# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-691


ADMIN-MEDIA, LLC

VERSUS

AC OF LAFAYETTE, L.L.C.



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20182424
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and D. Kent Savoie, Judges.


**AFFIRMED.**

**H. Edward Barousse, III**
**Borne, Wilkes & Rabalais, L.L.C.**
**200 West Congress St., Suite 1000**
**Lafayette, LA 70501**
**(337) 232-1604**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Admin-Media, LLC**

**Arthur R. Kraatz**
**Jeremy T. Grabill**
**Phelps Dunbar, LLP**
**Canal Place, 365 Canal Street, Suite 2000**
**New Orleans, LA 70130-6534**
**(504) 566-1311**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Admin-Media, LLC**

**Charles M. Rush**
**Rush, Rush & Calogero**
**202 Magnate Drive**
**P.O. Box 53713**
**Lafayette, LA 70505**
**(337) 235-2425**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **AC of Lafayette, L.L.C.**

**GREMILLION, Judge.**

The Plaintiff, Admin-Media, LLC, appeals a summary judgment granted in favor of the Defendant, AC of Lafayette, L.L.C., relating to indemnification claims from the sale of a business. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Admin-Media, LLC (the Buyer) purchased assets of an online business owned by AC of Lafayette, L.L.C. (the Seller), including its website, cajungrocer.com. The parties confected an Asset Purchase Agreement on January 5, 2018, which set forth the contract between the parties including that the Buyer's payments would be made over time.[1]

Litigation ensued shortly thereafter in April 2018. The Buyer filed a petition for a temporary restraining order, preliminary injunctions, and damages relating to a separate lease agreement (the commercial lease) it entered into with the Seller, also on January 5, 2018, for the short-term use of portions of the Seller's warehouse in Lafayette until the Buyer's warehouse in New Orleans was ready.[2] The Buyer alleged that the Seller changed the locks and prevented it from removing products and equipment necessary for the operation of the business. By a consent judgment filed on April 24, 2018, the parties agreed to allow the Buyer access to the warehouse. On April 30, 2018, the Buyer filed a motion for temporary restraining order and preliminary injunctive relief to preserve the status quo. In its answer, the Seller maintained that the Buyer did not perform its obligations under the lease but, instead, damaged and used equipment without permission and failed to make timely rental

---

[1]The total purchase price was $2,000,000.00. $500,000.00 cash was due at closing (closing payment), plus or minus the estimated closing date working capital adjustment, if any, $500,000.00 cash due on July 1, 2018 (the second payment), and four annual payments of $250,000.00 beginning January 1, 2019 (post-closing payments).

[2] The lease was set to expire on April 30, 2018, and required a weekly rental payment of $3,700.00.

payments. The Seller further asserted that the Buyer withheld the $500,000.00 post-closing payment due on July 1, 2018, "based on frivolous and baseless claims concerning adjustments to the purchase price and indemnity claims." The Seller alleged that the Buyer had no right to set off unliquidated indemnification claims pursuant to La.Civ.Code art. 1893 and the Asset Purchase Agreement.

On October 8, 2018, the Seller filed a motion and order for preliminary default against the Buyer. The same day, the Buyer filed a dilatory exception of prematurity.

On December 11, 2018, the Seller filed a motion for partial summary judgment relating to a number of issues: the late filing of the new working capital statement by the Buyer; arguing that an adjustment for "Cajun Cash" (a customer rewards program) was not warranted; that indemnity claims in the amount of $155,000.00 and lease damage claims in the amount of $75,000.00 could not be set off against the amounts owed by the Buyer because the claims were not liquidated and are not "owed" claims as defined by the Asset Purchase Agreement; the Buyer breached it obligation to timely pay the July 1, 2018 payment; and the Seller is entitled to 10% interest on all amounts due and its attorney fees and costs.

Following a hearing on January 22, 2019, addressing the Buyer's/Kevin Bordes (personally) dilatory exception of prematurity, and the Seller's motion for partial summary judgment, the trial court sustained the Buyer's exception of prematurity and dismissed the Seller's claims in reconvention regarding net working capital adjustments, and ordered that the parties' disputes relating to the new working capital adjustments must be submitted to an independent accounting firm for resolution pursuant to the Asset Purchase Agreement.[3] It dismissed all of the Seller's third-party claims against Kevin Bordes personally. It granted the Seller's

---

[3] Kevin Bordes is the CEO of Admin-Media, LLC.

2

motion for partial summary judgment in part "declaring that §11.6(f) and §11.7 of the Asset Purchase Agreement do not permit [the Buyer] to withhold a portion of the July 1, 2018 Post-Closing Payment based on unliquidated indemnification claims." The judgment was designated as final. However, the judgment was not signed. The same judgment immediately follows the previous one in the record and is signed on February 7, 2019, but it strikes through the last paragraph designating the judgment as final and has a handwritten "Denied" next to the paragraph. That same day, the Seller filed a first supplemental and amended reconventional demand for past-due payments and to accelerate the payments due pursuant to the Asset Purchase Agreement.

On February 26, 2019, the Buyer filed a first amended and supplemental petition seeking a declaratory judgment that withholding of payments was proper pursuant to the indemnification provisions, that the Seller had no cause of action against the Buyer on the basis of §11.6(f), and that the Seller was not entitled to any remedies under the Asset Purchase Agreement for the withholding of post-closing payments on the basis of §11.6(f).

On March 21, 2019, the Seller filed another motion for partial summary judgment alleging that there were no genuine issues of material fact that:

> 1. The indemnification claims are unliquidated and therefore pursuant to the terms of the Asset Purchase Agreement, Louisiana law and this Court's prior ruling Sections 11.6(f) and Section 11.7 of the Asset Purchase Agreement do not permit Admin Media to withhold any portion of the Post-Closing Payments based on unliquidated indemnification claims.

> 2. Admin Media is indebted to AC in the amount of $273,049.19 for the improperly withheld Post-Closing Payments that became due, specifically $23,049 withheld from the July 1, 2018 payment and $250,000 withheld from the January 1, 2019 Post-Closing Payment

> 3. Admin Media breached the terms of the Asset Purchase Agreement by withholding and failing to pay $23,049 of the July 1, 2018 payment and $250,000 of the January 1, 2019 payment based

3

upon unliquidated indemnification claims and accordingly is in breach of their obligation to pay the Post-Closing Payments within 5 days of the due date.

4. Admin Media is liable to AC for the interest at the rate of 10% computed annually on such amounts awarded from the date the amounts are shown due until paid.

5. AC is entitled to accelerate all remaining Post-Closing Payments due based upon Admin Media's failure to timely pay the July 1, 2018 and January 1, 2019 Post-Closing Payments.

6. Admin Media is liable to AC for reasonable attorney fees for the collection of Post-Closing Payments as well as all costs.

Attached to the motion was the affidavit of Charles F. Hohorst, III, the former CEO and managing member of Cajungrocer.com (now the CEO of AC of Lafayette), the Asset Purchase Agreement, assorted correspondence between the parties' attorneys, and screenshots from the website cajungrocer.com. In its May 2019 opposition to the Seller's partial motion for summary judgment, the Buyer alleged new facts surrounding the fraudulent hacking of the cajungrocer.com website and the theft of customer credit card information as further proof of the misrepresentations made by the Seller and justification for withholding post-closing payments.

Following a hearing on the Seller's partial motion for summary judgment, the trial court granted summary judgment in favor of the Seller in its May 24, 2019 judgment in which it stated:

> . . . the terms of the Asset Purchase Agreement do not permit Admin Media, LLC to withhold any portion of the Post-Closing Payments (as that term is defined in the Asset Purchase Agreement) based on unliquidated indemnification claims; and (ii) holding that Admin Media, LLC must pay to AC of Lafayette, LLC $23,049.19 withheld from the July 1, 2018 Post-Closing Payment based on unliquidated indemnification claims and $250,000.00 withheld from the January 1, 2019 Post-Closing Payment based on unliquidated indemnification claims."

4

The judgment further ordered the Buyer to pay the Seller interest on the amount due of $23,049.19 beginning July 1, 2018, and on the amount due of $250,000.00 beginning on January 1, 2019. The Buyer now appeals.[4]

## ASSIGNMENTS OF ERROR

The Buyer asserts as error:

1. The trial court erred in holding that § 11.6(f) of the Purchase Agreement applies only to indemnification claims that are fully liquidated.

2. The trial court erred in granting Seller's motion for partial summary judgment and ordering Buyer to pay to Seller the amounts withheld from the Post-Closing Payments as security for its indemnification claims.

## DISCUSSION

On appeal, summary judgments are reviewed de novo. *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id.* This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). This means that judgment must be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id.* If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id.*

Material facts are those that determine the outcome of the legal dispute. *Soileau v. D & J Tire, Inc.*, 97-318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied*, 97-2737 (La. 1/16/98), 706 So.2d 979. In deciding whether facts are material to an action, we look to the applicable substantive law. *Id.* Finally, summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966(A)(2).

*Am. Zurich Ins. Co. v. Caterpillar, Inc.*, 12-270, pp. 4-5 (La.App. 3 Cir. 10/3/12), 99 So.3d 739, 742-43.

---

[4] Subsequent motions were filed into the record which are irrelevant to the matter on appeal.

5

The Asset Purchase Agreement entered into by the parties is a contract subject to the general rules of contract interpretation, which are set forth in La.Civ.Code arts. 2045 et seq. In *Henderson v. Sellers*, 01-529, pp. 4-5 (La.App. 3 Cir. 12/5/01), 815 So.2d 853, 856, we summarized the law pertaining to contractual interpretation:

> The interpretive purpose is to determine the common intent of the parties. La.Civ.Code art.2045. In attempting to determine that common intent, we may not seek a different interpretation "when the words of a contract are clear and explicit and lead to no absurd consequences." La.Civ.Code art.2046. However, if words of a contract are susceptible of different meanings, we must interpret them in the manner that "best conforms to the object of the contract." La.Civ.Code art.2048. We are required to interpret a doubtful provision "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art.2053. Additionally, where the doubt created by a contract provision cannot be removed, we must interpret that provision against the party who furnished it. La.Civ.Code art.2056.

The determination of whether the words of a contract are clear and explicit or ambiguous is a question of law. Thus, an appellate court's determination on review is whether the trial court interpreted the contract correctly or incorrectly. *Hebert v. Ins. Ctr., Inc.*, 97-298 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, *writ denied*, 98-0353 (La. 3/27/98), 716 So.2d 888.

The Asset Purchase Agreement is a thirty-eight-page document, of which four pages are dedicated to the subject of indemnification in ten separate sections. The sole issue before this court is whether §11.6(f) of the Asset Purchase Agreement requires that the Buyer's indemnification claims be liquidated before they can be subject to the set-off provisions of the agreement. The Buyer argues that nothing in the contract is ambiguous, and the contract evidences no indication that liquidation was a prerequisite to the set-off rights set forth in §11.6(f). The full text of §11.6(f) states (emphasis added):

> Notwithstanding anything to the contrary in this Agreement, and without prejudice to any other right or remedy it has or may have, Buyer may *set off or recoup* any indemnification payments *owed* to it by Seller

6

pursuant to this Article 11 against *any Post-Closing Payments to the Company pursuant to Section 3.1*

At the hearing on the motion for summary judgment, the trial court stated:

> . . . .[T]here's nothing defined to what "owed" means.
>
> So, you know, as the Court, I've got to look at the whole document and figure out what "owed" means. And, to me, "owed" means that a determination's been made that the amount is due and it's not just a guesstimate. Which all these are guesstimates of what damages might be.

Although the trial court stated that the Buyer may be due set-off at some point in the future, it could not set off payments based on disputed amounts. We agree with the trial court. While the Buyer may be due indemnity at some point in the future based on the resolution of the claims it has asserted against the Seller, it cannot unilaterally withhold payments when the sums due, if any, are undetermined and speculative. In its brief, the Buyer admits as such sating, "That alone is sufficient to establish a genuine dispute of material fact as to the merits of the indemnification claims." Although all parties concede that there is no genuine issue of fact that the indemnification claims are disputed–which is abundantly clear from the record–the Buyer uses this fact to claim that "because the Buyer is the non-movant, the Court must assume that Buyer's indemnification claims have merit" and that we must assume it will prevail on its indemnity claims. We disagree. The plain language of §11.6(f) sates that the Buyer's right to set off is based on indemnification payments *owed to it*. There has been no determination of what indemnification payments are owed to the Buyer, if any. There have only been allegations made by the Buyer. The Buyer's affidavit of amounts owed to it are unsupported by evidence. Simply, a contested debt cannot be a liquidated debt. *Leigh of All Trades, L.L.C. v. Non-Flood Protection Assets Mgmt. Auth.*, 19-42 (La.App. 4 Cir. 5/29/19), 274 So.3d 64.

7

Throughout its brief, the Buyer attempts to redefine "owed" to mean "withhold indemnification claims" with the introduction of new terminology throughout its brief that "owed" means the withholding of payments to serve as "security for indemnification claims." The Asset Purchase Agreement is devoid of any language referencing the withholding of payments due as "security" for indemnification claims. This argument is without merit.

*Compensation (set off) rights arising from contract versus via operation of law*

The Buyer argues that if liquidation is a prerequisite to set off, then inserting a clause in the Asset Purchase Agreement is meaningless because it amounts to nothing more than compensation by law. Compensation may be made by agreement (facultative compensation) even if the rules of legal compensation are not met. *See* La.Civ.Code art. 1901; *Buck's Run Enters., Inc. v. Mapp Const., Inc.*, 99-3054 (La.App. 1 Cir. 2/16/01), 808 So.2d 428. Legal compensation clearly requires liquidation before set off can occur. Louisiana Civil Code article 1893 states:

> Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.
>
> In such a case, compensation extinguishes both obligations to the extent of the lesser amount.
>
> Delays of grace do not prevent compensation.

It has long been the law of legal compensation that the existence and amount of the debt must be known or easily ascertainable by calculation according to legal standards. *See Zibilich v. Rouseo*, 157 La. 936, 103 So. 269 (La.1925), *Leigh of All Trades, L.L.C.*, 274 So.3d 64. While the parties were free to negotiate compensation pursuant to the Asset Purchase Agreement, the Buyer should have defined "owed" in the thirty-eight-page document to include "sums claimed by the buyer, but not yet determined or resolved by a court of law."

8

As noted by the Seller, the Buyer could set off any amount it deemed sufficient to avoid its obligation to pay post-closing costs. We agree with the Seller that applying the ordinary and plain meaning of the term "owed" means that the debt is due, certain, and specific. An uncertain debt is not liquidated and therefore, not owed.

In its reply brief to this court the Buyer argues that the Seller impermissibly introduces a new argument for the first time on appeal–that the Buyer failed to prove the quantum of its indemnification claims below. The Buyer argues that because the Seller never moved for summary judgment on this issue, the Seller never raised this argument in the trial court, and the parties have not completed damages discovery, the Court should ignore this impermissible argument. The Buyer's argument fails. The issue of what damages, if any, were suffered by the Buyer is the central issue of this case that is currently being litigated. The issue relating to the motion for partial summary judgment is the meaning of the language pertaining to indemnity claims in the Asset Purchase Agreement.

The Buyer again takes the opportunity to define "owe" as meaning that the "Seller presently 'owes' Buyer indemnity with respect to Seller's breaches of the Purchase Agreement." That determination remains to be seen and will be the subject of the trial. The Buyer's strained reading of the word "owe" fails. In order to effectuate such a meaning, "owes" would have to be clearly defined in the definition section of the contract. Because the "generally prevailing meaning" of "owed" in relation to compensation/set-off/ and/or indemnification claims is that they must be liquidated, in order to deviate from the generally prevailing meaning, the intent of the parties must be clear. La.Civ.Code art. 2047; *See Danna v. Barq's, Inc.*, 612 So.2d 253, 256 (La.App. 4 Cir. 12/29/92) ("defendant's claim for compensation or setoff lacks merit because both claims must be equally liquidated and demandable.

*American Bank v. Saxena,* 553 So.2d 836, 844 (La.1989). Barq's claim against plaintiff is contested and is not presently demandable.") The Asset Purchase Agreement evidences no such intent.

It is undisputed that there are genuine issues of material fact relating to a variety of issues between the parties. The Buyer argues that for summary judgment purposes, we must assume that it will prevail on all of its indemnity claims. Even if we did, the value of those claims is too speculative to authorize unilateral blanket withholding of whatever amounts the Buyer deems is "owed." While the Buyer fears that the Seller will be insolvent by the time the claims are actually litigated, the trial court has declined to accelerate the remaining payments as protection for the Buyer for that very reason. The remaining $1,000,000.00 in payments due over the course of four years provides adequate protection to the Buyer.

The Buyer offered no evidence to support its claims for the amounts it withheld. The amounts it claims as damages from various sources are strongly disputed and are genuine issues of material fact that must be addressed at trial. The matters are numerous, complex, and involve contracts that are separate and apart from the Asset Purchase Agreement (i.e. the commercial lease). Until these matters have been resolved at trial and the amount of set-off, if any, can be determined, the Buyer must pay the amounts owed in accordance with the contract terms. Accordingly, the trial court did not err in granting partial summary judgment in favor the Seller.

## CONCLUSION

The motion for partial summary judgment in favor of the defendant-appellee, AC of Lafayette, L.L.C., finding that set-off claims must be liquidated before they can be withheld as indemnification by the plaintiff-appellant, Admin-Media, LLC is

affirmed.  All costs of this appeal are assessed to the plaintiff-appellant, Admin-Media, LLC.

**AFFIRMED**.